## HODGE v. FABIAN.

1. Exceptions stating no specific objections not considered because too general.
2. Findings of fact by the master, concurred in by the Circuit Judge, in a case in chancery, approved.
3. Under proceedings by an administrator in the Court of Probate for sale of land in aid of assets, part of intestate's land was ordered to be sold, and another part, in the same order, reserved for further consideration. Afterwards a second order directed the sale of the parcel previously reserved. *Held,* that parties to that proceeding, not then objecting, were bound by the second order.
4. The Court of Probate having jurisdiction of a proceeding instituted by an administrator for the sale of his intestate's lands in aid of assets, a decree, directing the sale of more land than was necessary for the purpose, cannot be afterwards questioned in an action in the Court of Common Pleas, by one of the distributees, who was a party to the Probate Court proceedings, against the purchasers of the land last sold.

Before NORTON, J., Colleton, October, 1888.

This was an action by Elvira R. Hodge, a distributee of James E. Fabian, against the administrator and other distributees of Fabian, and against purchasers of some lots of land of the intestate under a decree of the. Probate Court. The purpose of this action was to set aside said sales, have said lots partitioned or resold, and to require the administrator to account. The opinion states the case.

*Mr. J. C. DeTreville,* for appellant.

*Messrs. Howell, Murphy & Farrow,* contra.

July 5, 1889. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. As well as can be gathered from a voluminous brief, in indistinct manuscript, the leading facts of this case are as follows: In the year 1882, James E. Fabian, of Colleton, died intestate, seized and possessed of a small estate of realty and personalty, and leaving as his heirs and distributees seven children, viz., Elvira R. (now Hodge), the plaintiff, John

M., James T., George B., Franklin, Claudius D., and Amanda B. Fabian, of whom Franklin, Claudius, and Amanda are still minors. John M. Fabian administered upon the personal estate, and finding that it was not sufficient to discharge the debts of the intestate, on December 1, 1882, he filed a petition in the Probate Court of the county as administrator, stating, among other things, that the intestate, at the time of his death, was seized and possessed of two houses and lots—lots Nos. 24 and 26—in the plan of the town of Ridgeville, and also a parcel of land, containing twenty-nine (29) acres, more or less, and praying that the said lots and small parcel of land should be sold, and the proceeds thereof, or as much thereof as may be necessary, be applied to the debts of his intestate.

A copy of the probate record was in evidence, and showed that the plaintiff, whose name at that time was Elvira R. Hill, and not, as now, "Hodge," and the other adult children were summoned and regularly made parties. None of the defendants answered, but the minor children, and the Probate Judge, John B. Stokes, Esq., decreed by default, "That as it appears that the personal estate of the intestate is not sufficient for the payment of the debts of the estate," and on proof of the intestate's title to the two lots (Nos. 24 and 26), he ordered those lots sold for cash in aid of the personalty in the payment of debts; and then proceeded as follows: "There being some dispute as to the title of the estate in the remaining 29 acres mentioned in the complaint, the court reserves that question for future consideration," &c. The sale of the two lots ordered took place, and we suppose the proceeds were applied to the debts, as we hear nothing more of these lots. After the sale of these lots, the Probate Judge, on January 7, 1884, made a supplemental decree, by which he directed that the remaining parcel (29 acres) should be divided into lots not less than one nor more than five acres each (with an unimportant exception), and sold upon the terms of one-third cash, and the remainder in two equal annual instalments. The land was divided and sold as directed, and at that sale the defendants, Baxter, Cummings, Way, and Mood, became purchasers of some of the lots, and having complied with the terms of sale, received titles, and were let into possession of the same.

These purchasers were made parties, and stoutly resisted the plaintiff's prayer to set aside the sales, claiming that they had purchased and paid for their respective lots at a judicial sale ordered by the Probate Judge, under proceedings in all respects formal and regular, the court having jurisdiction of the subject matter, and with all proper parties before it; that the plaintiff having had regular notice of the probate proceeding, and having made no objection, but, on the contrary, having acquiesced therein, and actually received her full share of the excess of the sales over paying the debts of the estate, she was bound thereby, and estopped from averring against the sale; and that, besides, she had received a lot valued at $70, which was assigned to her at her request.

It was referred to John D. Edwards, Esq., as special master, to take the testimony and report his conclusions, both of law and fact. He did so, and made a long and very careful, clear, and full report, in which, after stating the facts and the law, he said : "I find, therefore, that the proceedings in the Probate Court were regular on the face of the record, and cannot be thus assailed; but even if not entirely regular, there is not sufficient apparent infirmity as to render them void or susceptible to collateral attack. I hold, therefore, that the action is not maintainable, and should be dismissed," &c. Upon exceptions, this report was confirmed by Judge Norton, who made it the judgment of the court, remarking, that "the infants do not seek any relief in the action, and it is not adjudged whether or not, upon proper proceedings begun for that purpose, they would be entitled to some relief."

From this decree, the plaintiff appeals upon the following grounds :

"1. Because his honor erred in not sustaining plaintiff's exceptions to the master's findings of fact—said findings not being in accordance with the testimony taken.

"2. Because plaintiff's exceptions to the 8th finding of fact should have been sustained, there not being sufficient evidence to prove that the plaintiff received as an heir at law a house and lot, at the valuation of seventy dollars.

"3. Because plaintiff's exception to the master's 4th finding of fact, viz., that the proceedings were regular and according to

law, and that a copy of the petition and summons were served on the plaintiff, should have been sustained, there being no evidence to support his finding.

"4. Because plaintiff's exception to the 7th finding of fact, 'that George D. Baxter, one of the defendants, was the husband of one of the heirs,' should have been sustained, there being no testimony to support the finding.

"5. Because his honor erred in not sustaining plaintiff's exceptions to the master's conclusions of law, there not being sufficient facts on which such conclusions could be based.

"6. Because his honor erred in not decreeing that the Probate Judge had exhausted his jurisdiction at the time of his second decree, there being no necessity for the same.

"7. Because the exception to the 3rd conclusion of law should have been sustained, as it was error to hold that the Probate Judge had the discretion vested in him to sell so much of the lands, and in such manner, as may seem to him best; whereas the law says, 'so much as may be necessary,' &c.

"8. Because his honor erred in not decreeing that the Probate Court was without jurisdiction in making the sale of the 30 acres of land, and that said sale was void.

"9. Because his honor erred in dismissing the complaint without granting the relief prayed for, and should have referred the case back to the master to correct his findings of fact and errors of law."

Exceptions 1 and 5 state no specific objection, and, therefore, are too general to be considered.

Exceptions 2, 3, and 4 relate to findings of fact by the special master, concurred in by the Circuit Judge; and in such case it is well known to be the rule of this court not to disturb the finding unless manifestly against the weight of the evidence. Whether G. Baxter did, or did not, marry one of the children of the intestate, was really of no importance in the case. We have read the record of the probate proceedings carefully, and we entirely concur with the master and Circuit Judge, that the plaintiff was regularly served in that case under the name of "Elvira R. Hill." Strobel, the officer, so swears; and we further concur, upon the testimony of the Probate Judge, Stokes, that a lot, appraised at

$70, was assigned to the plaintiff, and that she also received money advanced by him, said Stokes.

Exceptions 5, 6, 7, and 8 substantially make the point, that, conceding the jurisdiction of the Probate Judge, in the first instance, to sell the lands of the intestate in the proceeding of John M. Fabian, administrator, *v.* Elvira R. Hill *et al.*, yet such jurisdiction was exhausted by the first order of sale, which order was in the nature of a final judgment, and no further order of sale under the proceedings could be made without a new case and fresh service of the parties. If the Probate Judge had been merely the appointee of another court, to sell certain portions of the estate, which had been done, there would have been some force in the view. *Ex parte Knight*, 28 S. C., 484. But it will be observed, that he was also the judge, and that the first order of sale did not purport to be a final judgment; that the petition prayed for the sale of the whole land in aid of the personalty, and that the plaintiff, who was a defendant in that proceeding, allowed the prayer of the petition to be taken by default against her, and the Probate Judge only refrained from selling *all* the land at the first sale, for the reason that there was "some dispute" whether the title to the parcel not then sold was in the estate—and on that account alone "the court reserved the question for future consideration." Afterwards, probably finding that the estate had title, the second parcel was sold. It seems to us, that those who were parties to that application have no right to complain that the sale, which they had allowed to be ordered and adjudged, should be made at different times, and that we must consider the matter precisely as if all the lands, according to the prayer of the petition, had been disposed of at the first sale.

But it is further urged, that if it must be considered that there really was but one order of sale, more lands were sold, as it turned out, than was necessary for the payment of the debts, and to the extent of such excess, the Probate Judge did not have jurisdiction, and, as a consequence, the sales were absolutely void—that is to say, they were part good, but in part bad, depending upon the result of the sales. Section 40 of the Code declares that, "Wherever it shall appear to the satisfaction of any Judge of Probate that the personal estate of any person deceased is insuffi-

cient for the payment of his debts, and all persons interested in said estate being first summoned before him, and showing no cause to the contrary, such Judge of Probate shall have power to order the sale of the real estate of such person deceased, or of so much thereof as may be necessary for the payment of the debts of such deceased person, upon such terms and in such manner as he may think best," &c. This act gives to the Probate Judge important judicial functions. Whenever it shall appear, to "his satisfaction," that the personal estate is insufficient for the payment of the debts of an intestate, he is to judge of the necessity of the sale—lands to be sold, &c.

Although the insufficiency of the personal property for the payment of the debts is the foundation of his jurisdiction, we cannot suppose that his judgment in the matter must go for nothing, and that his order of sale *ipso facto* must be absolutely void the moment the proceeds of sale touch the point of full payment of the debts. It is not always easy to foresee what lands will sell for at public auction, and the construction contended for would emasculate the judicial powers given to the Probate Judge—tend to great confusion, make titles uncertain, and destroy the value of such sales, by raising a well grounded distrust of them. We think the inquiry should be, whether the Probate Judge had jurisdiction of the subject matter and of the parties, and if so, that his order of sale must be regarded as the judgment of a competent court upon a matter within its jurisdiction, and not subject to collateral attack. See *Turner* v. *Malone*, 24 S. C., 398. "The jurisdiction of the court [probate] over the subject matter attaches on the filing of a petition sufficient in form. The matter stated in the petition may, or may not, be true. The heirs, when jurisdiction over them is obtained, may be treated as entering a general denial. The order of the court, granting or refusing the prayer of the petition, is in the nature of a judgment conclusively establishing that the sale is, or is not, necessary. If erroneous, it must be corrected by appeal, or some other appropriate proceeding. It cannot be collaterally avoided by showing that the petition was false." Section 14, Freeman Void Judicial Sales. "If, upon hearing of the petition, the court is 'satisfied' that a proper case exists, it will enter an order or license for the sale of

the land.   If the court had jurisdiction, this order, until vacated
or reversed, is binding on all parties in interest.   The purchaser
under it is in no danger of losing his title by proof being made
that the order was erroneously given.   It cannot be collaterally
attacked for error, fraud, or irregularity, if the court had juris-
diction," &c.   Void Judicial Sales, section 20, and notes.

The judgment of this court is, that the judgment of the Cir-
cuit Court be affirmed.