### EARLE v. EARLE.

In 1856, the defendant gave his mother his note for $6,000 for the purchase of a tract of land and took from her a bond for titles. In 1865, the mother died and defendant became the administrator of her estate, and

in 1870 obtained a decree for the sale of certain town lots of his intestate upon the allegation that the personal estate was insufficient to pay her debts. To this action all of the distributees were parties, some of them being minors. This present action was instituted in 1884, by these same distributees to require defendant to account for and pay his said note, or, failing to do so, that this tract of land be sold. *Held*, that the first action necessarily involved an accounting by the administrator for the personal estate and an adjudication that the personalty was insufficient to pay debts, and it must be assumed, certainly after so long a delay, that all this had been done. Therefore the matter sought to be litigated in this action is *res judicata*.

Before NORTON, J., Anderson, February, 1888.

This was a suit by Alexander C. Earle and others against Elias J. Earle and others, commenced January 4, 1884. The amended summons and complaint bear date July 20, 1887. The Circuit decree was as follows :

This action was originally for the partition of "Evergreen" plantation, of which plaintiffs allege that Elizabeth H. Earle died seized. On reference before the master it appeared that she owned and sold "Evergreen" to the defendant, Elias J. Earle, and gave him bond for titles thereto, and that he at the same time gave her his sealed note for six thousand dollars, balance of the purchase money therefor. It also appeared that he has been in possession ever since 17th Nov., 1856, the date of said bond and note under said purchase.

The plaintiffs and defendants are the distributees and heirs at law of Elizabeth H. Earle, who died in 1865, and she and they were the distributees and heirs at law of Claudius E. Earle, her predeceased son. At the commencement of this action, the following plaintiffs were respectively aged as follows, to wit: Samuella G. Gatlin under twenty-two years, Nellie G. Head under twenty-four years, John R. Earle under twenty-six years, and James H. Earle under twenty-eight years; that Elias J. Earle became the administrator of the personal estate of Elizabeth H. Earle 13th January, 1866 ; that at the time of her death Elizabeth H. Earle was the administratrix of the personal estate of Claudius E. Earle, and was indebted to it between six and seven hundred dollars; that Elias J. Earle became administrator *de*

500 EARLE v. EARLE.

8

Circuit Decree. [33 S. C.

*bonis non* of the last mentioned estate after her death ; that Elias J. Earle, as such administrator and administrator *de bonis non*, filed in this court his complaint, in which, among other things, he alleged the insufficiency of the personal assets of the former estate to pay the amount due to the latter estate and the other debts due by Elizabeth H. Earle, deceased, and that it was necessary to sell certain real estate of which she died seized (describing it) for that purpose, and also prayed partition of the surplus arising on such sale, if there should be any.

The parties to that action were the same as to this. The judgment was that the land be sold and all of the net proceeds applied to the satisfaction of the debts of Elizabeth H. Earle. No mention was made of "Evergreen" in this case. Elias J. Earle had sold two slaves, Dan and Mid, to Elizabeth H. Earle prior to or about the time of said sale of "Evergreen," and their price was not to go as a credit on said note for six thousand dollars given in the land trade. Two thousand dollars were paid by Elias J. Earle on his said note about the 1st day of January, 1858, through a factor, who paid so much on Elizabeth H. Earle's note for Florida land. The proof does not establish that he paid the balance due by his mother on her notes for Florida land ; Elizabeth H. Earle did not give to Elias J. Earle as an advancement the balance due on his said note for six thousand dollars. No actual payment has been proven thereon except the two thousand dollars above mentioned.

Without discrediting Elias J. Earle, I think that the facts which he states do not warrant me in arriving at the conclusion to which he seems to have arrived, that there was actual payment of the note in his mother's life-time.

The plaintiffs obtained leave to amend their complaint, and it comes before me as an action to compel Elias J. Earle to pay six thousand dollars, with interest from 17th Nov., 1856, for distribution as Elizabeth H. Earle's personal estate, or that he deliver up "Evergreen" for partition among her heirs. Elias J. Earle answers that the amendments are not allowable because they change the nature of the action ; that he has actually and presumptively paid said note ; that a grant to him is presumed ;

that he is protected by the statute of limitations, and that the matter is *res adjudicata*.

The presumption that the note was paid and that "Evergreen" was conveyed, do not arise under the facts stated, nor does the statute of limitations bar the action—the statute is inapplicable in any view of the case, unless it be considered as a demand upon Elias J. Earle to account as administrator of the personal estate of Elizabeth H. Earle, deceased. He has not, as such administrator, done any act purporting to be an execution, or a throwing off of his trust, unless the action brought by him as aforesaid be so considered; and if it be, then it is available under another aspect. In no event could the statute prevail against Samuella G. Gatlin.

When Elias J. Earle became administrator of the personal estate of Elizabeth H. Earle, the balance, if any, due on his note to her, became cash in his hands as such administrator. In the action instituted by him thereafter as aforesaid for the sale of real estate in aid of personal assets for the payment of debts, it was necessarily adjudged that the personal estate, including the proceeds of this note, were insufficient to pay the debts due on Elizabeth H. Earle's estate, and that her heirs and distributees were not entitled to any part of such proceeds—the question here is, whether her heirs and distributees are entitled to any part of such proceeds. The issue depends on an accounting, which ought and is presumed to have been then made, or must now be made; for distributees have no interest in any particular chose in action, but in the balance found due by the personal representative on an accounting for every chose in action and the other personal estate. The defence of *res adjudicata* is sustained.

It is ordered and adjudged, that the complaint be dismissed.

*Messrs. Murray & Murray* and *J. E. Breazeale*, for appellants.

*Mr. J. L. Tribble*, contra.

November 27, 1890. The opinion of the court was delivered by MR. CHIEF JUSTICE SIMPSON. This action was commenced

originally for the partition of a certain tract of land situate in Anderson County, known as the "Evergreen" place, and alleged to have belonged to Mrs. Elizabeth H. Earle at her death, and subject to partition among the plaintiffs and defendants hereinabove as her heirs at law. After the action had progressed somewhat as above for partition, it appearing that the defendant, Elias J. Earle, claimed the said land as his own by virtue of an alleged purchase by him from his mother in 1856 at the price of six thousand dollars, for which he gave his note, receiving from his mother, Mrs. Elizabeth H. Earle, bond for title, the complaint, by order of the master, to whom the case had been referred, was amended so as to charge the said Elias J. Earle with this purchase money note and interest above, as administrator of his mother—alleging that said note had never been paid in the lifetime of the said Mrs. Earle, and claiming that the said Elias J. Earle should account for it, as administrator; and failing to do so, that the said tract of land should be sold, the proceeds to be applied to the payment of said note, and then distributed among plaintiffs and defendants according to their rights as distributees. This order of amendment by the master was afterwards confirmed by his honor, Judge Hudson.

The contract of sale between Mrs. Earle and her son, Elias J. Earle, took place in 1856 when the said Elias took possession and has been in possession ever since. Mrs. Earle died in 1865, having resided mostly with her son on the premises. Elias Earle in 1866 became the administrator of his mother, and also administrator *de bonis non* on the estate of Claudius E. Earle, of which estate the said Mrs. Elizabeth Earle had been administratrix, but died without full administration, rendering it necessary for administration *de bonis non*. Thereafter, in 1870, the defendant, Elias Earle, finding the estate of Mrs. Elizabeth Earle indebted, on account of a *devastavit* in the estate of Claudius Earle, instituted a proceeding for the sale of real estate in aid of the personal property, for relief, &c. To this proceeding the parties now before the court as the heirs at law of the said Mrs. E. Earle were all made parties, the minors being represented by guardians *ad litem*, duly appointed. That case proceeded to judgment, ordering the sale of certain land and the proceeds to be applied

to the debts of Mrs. Earle.    No mention was made therein of the "Evergreen" tract.

The defendant, Elias J. Earle, answered, setting up first the defence, that the amendment to the complaint should not have been allowed, as it changed entirely the nature of the action. Second. That he had actually and presumptively paid the purchase money note; that he was protected by the statute of limitations; and finally the whole matter was *res adjudicata* under the action which he instituted in 1870 to sell real estate, &c., for the payment of the debts.

The case finally reached a hearing before his honor, Judge Norton, in 1888, who, holding that the amendment to the complaint had changed the action from an action for partition to an action to compel Elias J. Earle to pay six thousand dollars, with interest from the 17th November, 1856, for distribution as Elizabeth Earle's personal estate, or that he deliver up "Evergreen" for partition among her heirs, proceeded to determine these questions under the defences set up.    And he decreed first that the presumption of payment did not arise under the facts.    Second. That the statute of limitations could not protect the defendant, and especially that the statute could not protect the defendant against the claim of Samuella G. Gatlin, who had recently arrived at age; that when Elias J. Earle became administrator, the amount due on his note became cash in his hands; and finally that in the action instituted by him in 1870 for the sale of real estate in aid of the personal assets for the payment of debts, it was necessarily adjudged that the personal estate of Mrs. E. Earle, including the proceeds of this note, were insufficient to pay the debts of Mrs. E. Earle, and that her heirs and distributees were not entitled to any part of such proceeds, holding as a conclusion therefrom that the matter of the liability of Elias Earle was *res adjudicata*, and therefore that the complaint should be dismissed, which he ordered and adjudged should be done.

The plaintiffs appealed, alleging error to the decree of Judge Norton in two particulars : First. That he erred in finding as matter of fact, that the defendant, Elias Earle, had made a payment on his note to his mother in 1888 of $2,000, and second

that he erred in sustaining the plea of *res adjudicata*. The defendant, Elias J. Earle, gave notice that if the court found itself unable to affirm the decree upon the grounds stated, that then he would urge its affirmance upon other grounds stated in said notice, which, however, from the view we take of the case, need not be considered herein, as the contingency upon which this motion is made does not arise.

We think the doctrine of *res adjudicata* is applicable, and is therefore fatal to the action. *Ex parte Roberts*, 19 S. C., 157. The same parties now before the court were before the court in the action of 1870, above referred to, and although it does not appear positively that the question of the liability of the defendant, E. J. Earle, for the amount of his note for $6,000 was therein raised and adjudged, yet that question was, as his honor, Judge Norton, says, necessarily involved. The claim of the administrator, E. J. Earle, was, that the personal assets were not sufficient to pay the debts of his intestate, and that real estate should be sold in aid thereof. This claim certainly involved an ascertainment of the amount of said personal assets, and an accounting therefor before there could be a judgment of sale, which was granted. See *Moore* v. *Davidson*, 22 S. C., 106; *Warren* v. *Raymond*, 17 *Id.*, 189; *Bath Paper Co.* v. *Langley*, 23 *Id.*, 146; *Fraser & Dill* v. *City Council of Charleston*, 19 *Id.*, 400; *United States* v. *Throckmorton*, 98 U. S., 68. The doctrine of *res adjudicata* is applicable, equally where the question at issue was involved in a former suit between the same parties and might and should have been raised, as where it was actually raised and adjudicated. But in this case we are compelled to assume, as it seems to us, especially after this long delay and acquiescence on the part of all of the parties in interest, a delay of nearly twenty years, that this matter was actually examined and considered. We do not see how the court in 1870 could have reached the conclusion that it was necessary to sell real estate in aid of the personalty without first determining that the debts of the estate would exhaust said personalty, including whatever amount the administrator had in his hands as cash from his own note to the intestate.

Having reached this conclusion upon the vital question of *res*

*adjudicata,* which goes to the foundation of plaintiff's action, there is no necessity to examine into the alleged error of fact as to the payment of $2,000 by E. J. Earle on his note. Nor is it necessary to adjudge and determine the questions embraced in the notice of the defendant, as grounds upon which he would rely to sustain the decree, in the event that this court should find itself unable to affirm it as made.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed, on the plea of *res adjudicata.*