## ELLIS v. CRIBB.

1. APPEAL—EXCEPTION—FINDING OF FACT.—The affirmance by Circuit Judge of finding of fact by master not excepted to, cannot be appealed from.

2. A MARRIED WOMAN, in 1895, could purchase chattel mortgages and crop liens against her husband by mortgage on her real estate, and such transaction would bind her separate estate.

3. EVIDENCE—TRANSACTIONS WITH DECEDENT.—Defendants, heirs at law and grantee of deceased, by introducing testimony of decedent, taken *de bene esse* as to transactions between her and plaintiff, make the testimony of plaintiff as to such transactions competent.

Before WATTS, J., Marion, November, 1898.    Affirmed.

Foreclosure by B. S. Ellis against W. T. Cribb and children of Mary Jane Cribb, and James Norton.    From Circuit decree granting foreclosure, defendant, James Norton, appeals.

*Messrs. Sellers & Sellers,* for appellant, cite: *A married woman has no power to mortgage her separate estate to secure debt of her husband or other person:* 28 S. C., 303; 36 S. C., 563; 24 S. C., 461; 26 S. C., 517; 27 S. C., 500, 525. *If plaintiff knew it was to pay husband's debt, mortgage is void:* 33 S. C., 260; 30 S. C., 99; 28 S. C., 303; 27 S. C., 525; 32 S. C., 499.    *Sale of husband's paper is mere pretense, and not binding on her:* 33 S. C., 231.    *Plaintiff's testimony as to transactions with Mrs. Cribb incompetent:* Code, 400; 9 S. C., 398; 3 S. C., 423; 24 S. C., 76; 29 S. C., 597; 34 S. C., 252; 22 S. C., 25; 33 S. C., 303.    *Norton's answer raised an issue, if not plaintiff has waived defect:* Code, 170; 29 S. C., 286; 10 S. C., 100; Code, 180, 181; 12

S. C., 1; 25 S. C., 123; 6 S. C., 49; Code, 164, 169; 11 S. C., 409; 12 S. C., 130.

*Mr. W. J. Montgomery,* contra, cites: *Answer of Norton raises no issue:* Code, 170; 30 S. C., 170. *Findings of fact by master not excepted before Circuit Judge, final:* 11 S. C., 29, 543, 547; 15 S. C., 11. *Mrs. Cribb, under acts of 1891 and 1882, could purchase her husband's papers:* 36 S. C., 475. *Mrs. Cribb is estopped from setting up married woman's defense:* 13 S. C., 370; 22 S. C., 548; 24 S. C., 59; 33 S. C., 200. *Married woman is estopped by recitals in her bond from denying that contract is for benefit of her separate estate:* 45 S. C., 651; 31 S. C., 437; 34 S. C., 176; 49 S. C., 469. *If she is not estopped, husband is:* 45 S. C., 654; 34 S. C., 176; 100 U. S., 618. *Circuit Judge must decide case on report and exceptions:* 12 S. C., 154; Code, 194. *Exceptions too general:* 44 S. C., 364, 484. *Introduction of Mrs. Cribb's testimony makes plaintiff's testimony competent:* Code, 400. *Testimony de bene esse not admissible after seal broken:* Acts of 1883, p. 34. *Such testimony cannot be introduced after death in a different action between new parties:* 36 N. H., 575; 74 Ala., 513; 43 Mich., 247.

June 20, 1899. The opinion of the Court was delivered by

MR. JUSTICE JONES. This action is to foreclose a real estate mortgage, securing a note, executed by Mary J. Cribb to the plaintiff. Mary J. Cribb answered, setting up as a special defense that she was a married woman at the time of the execution of said note and mortgage; that the property mortgaged was her separate estate, and that said note and mortgage were based upon and given for a book account and perhaps upon other mercantile papers made by her husband to the said Ellis, none of which were for the benefit of her separate estate; that said note and mortgage were given to and taken by plaintiff to secure said book account and other mercantile papers made by her husband, W. T. Cribb, to and

with the plaintiff. After filing this answer, Mary J. Cribb
died intestate, and plaintiff filed a supplemental complaint,
making as parties defendant the husband, W. T. Cribb, and
other heirs at law, and also James Norton, who was in posses-
sion of the land under purchase from Mrs. Cribb. W. T.
Cribb answered, but upon an oral demurrer thereto, he with-
drew his answer. The other heirs at law of Mary J. Cribb
were infants, and answered formally by guardian *ad litem*.
James Norton, who is the only appellant here, answered as
follows: "The defendant, James Norton, a party hereto, an-
swering the complaint herein, says for himself, that he does
not deny any of the allegations of the complaint.
Admits that he purchased the land covered by said mortgage
from the mortgagor in her lifetime, and further says that he
makes no objection to the foreclosure of plaintiff's mort-
gage, provided the said mortgage is held to be valid and
binding upon the mortgagor at the time of its execution. If
held otherwise, he does object to its foreclosure. Having
answered all that he is advised is material to make answer
unto, he prays to be herein dismissed, with his reasonable
cost allowed therein."

The master, to whom all issues of law and fact were re-
ferred, found the following facts: For several years prior to
and including the year 1895, W. T. Cribb, who lived with
his wife, the maker of the mortgage sought to be foreclosed
herein, upon her lands, conducting farming operations,
whether for himself, for her, or for their joint account, does
not clearly appear, made large purchases of agricultural and
family supplies from the plaintiff, B. S. Ellis, running the
store accounts in the name of W. T. Cribb; that to secure the
agricultural advances, he gave from year to year crop liens
and bills of sale on his stock and personal property; that for
the transactions of the year 1895, he fell behind in settling
his accounts with plaintiff, who took as additional security a
bill of sale of his stock, crops growing during the year 1895,
wagons, &c., sufficient to amply secure the balance due to
plaintiff, which was about $345. After obtaining this bill

of sale, plaintiff proposed to Mary Jane Cribb, wife of W. T. Cribb, to sell her the same, if she would give him a mortgage on her land. She hesitated; said she would think about it, and a few days afterwards her husband informed Ellis that she had concluded to give the mortgage for the papers plaintiff held against him, W. T. Cribb. A day was appointed, and on that day Mrs. Cribb went to plaintiff's store, executed the mortgage, and received the papers, bills of sale, liens, etc., which plaintiff held against W. T. Cribb, in exchange for the mortgage sued on. The master also found that a part of the consideration of the note and mortgage was the payment by Ellis of a balance due upon a mortgage on the home place of Mrs. Cribb, executed by her to Holliday. The master further found: "The circumstances surrounding this case show that Mrs. Cribb was anxious to get possession of the papers held by Ellis and to pay the Holliday mortgage on her home place, which was then long past due. In addition, it would give her and her husband time to negotiate a sale of this tract of land, on which there was then a mortgage past due to A. M. Woods for $400, besides getting within her control the bills of sale and other encumbrances against her husband's personal property, which might be enforced at any time." Upon these facts the master held as matter of law that Mrs. Cribb, under the act of 1891, had the right to purchase the securities held against her husband, and to give the note and mortgage in question for the same, and so recommended foreclosure and sale of the mortgaged premises.

James Norton alone excepted to the report of the master. We do not see that he made any specific exception to the master's findings of fact. The Circuit Court affirmed the master's report, "upon the grounds therein stated as well as upon the additional ground that the answer of James Norton raises no issue, he being the only party now before the Court." In the exceptions by James Norton to this Court we do not find any specific exception to the decree of the Circuit Court, affirming the master's conclu-

sion of fact that the note and mortgage in question were executed in purchase of the claims held by Ellis against W. T. Cribb, and also for the balance due on the Holliday mortgage on Mrs. Cribb's home place. As there was no exception to the master's report in this regard before the Circuit Court, of course there was no error in the Circuit Court's affirmance of the master in this regard, and we would not now entertain any exception seeking a review of that conclusion of fact. We do not hesitate to say, however, that if such a question were properly before us, the evidence supports the findings of the master. This being so, the conclusion follows that the note and mortgage are valid obligations of Mary J. Cribb. Inasmuch as the note and mortgage were executed previous to the time when the Constitution of 1895 became of force, the right of Mrs. Cribb as a married woman to execute the same must be determined under the Constitution of 1868, and the act of 1891, appearing as section 2167, Revised Statutes 1893, of force at the time of their execution. This act provides: "A married woman shall have the right to purchase any species of property in her own name, and to take proper legal conveyances therefor, and to bind herself by contract in the same manner and to the same extent as though she were unmarried, which contract shall be legal and obligatory, and may be enforced at law or in equity by or against such married woman in her own name, apart from her husband: *Provided,* That nothing herein shall enable such married woman to become an accommodating indorser, guarantor or surety, nor shall she be liable on any promise to pay the debt or answer for the default or liability of any other person, &c." As there is nothing in the Constitution of 1868 which prevents the legislature from conferring on a married woman rights and powers in addition to those conferred by the Constitution, this act is the guide in determining the question before us. *Pelzer, Rodgers & Co.* v. *Campbell & Co.,* 15 S. C., 581. Under the ascertained facts in this case, Mrs. Cribb, in the transaction under consideration, did not

become "an accommodating indorser, guarantor or surety, nor liable on any promise to pay the debt or answer for the default or liability of any other person." She clearly had the right to purchase the claims against her husband, and to secure the purchase price by a mortgage of her land. Under the act of 1891, she might have borrowed the amount of money represented by the mortgage from Ellis, and then have *paid* the claims held by Ellis against her husband. *Philpot* v. *Cantey*, 52 S. C., 515. For a stronger reason, she could *purchase* the claims against her husband and secure the purchase price by mortgage of her land.

In view of this conclusion, it is quite immaterial whether or not James Norton had the right to avail himself of the defense set up by Mrs. Cribb, his grantor, or whether his answer raised any such issue.

There is a question raised as to the admissibility of evidence which we should notice, viz : whether the testimony of plaintiff as to any transaction or communications with Mrs. Cribb was admissible under section 400 of the Code of Procedure. The testimony of Mrs. Cribb was taken *de bene esse* a short while before her death, and was used in the case in reference to the transaction in behalf of defendants, her heirs at law and next of kin, and in behalf of defendant, Norton, her grantee. This rendered the testimony of the plaintiff competent under the express provision of said section 400.

Having sustained the Circuit Court decree on the grounds considered, it is unnecessary to notice the additional grounds presented by respondent for sustaining such decree.

Appellant's exceptions are overruled and the judgment of the Circuit Court is affirmed.