DYSON v. JONES.

1. INTEREST.—NOTE drawn due one day after date at ten per cent., draws interest at that rate after maturity.

2. EVIDENCE—TRANSACTIONS WITH DECEDENT.—In suit by devisee against administrator *de bonis non,* contest being alteration of note due administrator, after devisee testifies as to the handwriting of the alteration, &c., the administrator, under sec. 400 of Code, may testify that he did it at the instance of the maker and in his presence before delivery.

3. IBID.—IBID.—Acts alone of administrator as to a matter concerning the deceased, are not prohibited by sec. 400 of Code, in suit by devisee against administrator.

4. PRACTICE—AMENDING PLEADINGS—ALLEGATA AND PROBATA.—Evidence not inconsistent with allegations of the answer; but if they were, should not the trial Judge have ordered the pleading amended to conform to the proof on motion made?

5. NOTE.—FINDING that note was altered after death of maker, reversed; and held that contested words were added by payee, with consent and by direction of maker before delivery.

6. RES JUDICATA—PROBATE COURT—REAL PROPERTY—JURISDICTION.—In action to sell realty in aid of assets, the probate Court has jurisdiction, and must judiciously ascertain the claims against the decedent's estate, and his determination thereof is binding on all parties to the record, in absence of fraud.

Before TOWNSEND, J., Greenwood, September, 1901. Reversed.

Action by Thomas J. Dyson and Mattie Williamson against Wm. W. Jones, administrator *de bonis non,* with will annexed, of estate of Thomas J. Dyson *et al.* From Circuit decree, the defendants, Wm. W. Jones and Sallie F. Jones, appeal.

*Messrs. W. R. Richey* and *Sheppards & Grier,* for appellants. *Mr. Richey* cites: *This matter has been adjudged by probate court:* 33 S. C., 504; 52 S. C., 574; 54 S. C., 188; 58 S. C., 142. *Testimony of Jones not in violation of sec. 400:* 21 S. C., 597; 33 S. C., 310; 41 S. C., 125. *Law presumes alteration contemporaneous with execution:* 12 Rich. L., 387.

*Mr. Grier* cites: *Amount due on note is res judicata:* 17 S. C., 189 ; 1 Hill Eq., 22 ; 19 S. C., 158 ; 21 Ency., 128, 216 ; Con. 1868, art. V., sec. 20; Code, 1893, sec. 40; 24 S. C., 375 ; 4 S. C., 163 ; 31 S. C., 217 ; 33 S. C., 504 ; 30 S. C., 420 ; 56 S. C., 73 ; 52 S. C., 574 ; 54 S. C., 88 ; 22 Tex. L., 77 ; 62 Ala., 550 ; 98 U. S., 61 ; 17 S. C., 35 ; 14 Ency., 2 ed., 194 ; 61 S. C., 501 ; 1 John (N. Y.), 436 ; 107 U. S., 3. *As to burden of proof:* 9 Ency. P. & P., 684, *et seq.;* 58 S. C., 59 ; Bump. on Fr., 4 ed., sec. 615, 619, 620 ; 8 Ency., 654 ; 58 Am. Dec., 553 ; 14 Fed. R., 19 ; 1 Ency., 512 ; 42 L. R. A., 517 ; 4 L. R. A., 199. *As to admissibility of Jones' evidence:* 21 S. C., 597 ; 57 S. C., 283 ; Bail. Eq., 139 ; 30 S. C., 289 ; 33 S. C., 310.

*Messrs. Graydon & Giles,* contra. *Mr. Graydon* cites: *Plaintiffs' action is not barred:* 13 S. C., 21 ; 4 Strob. Eq., 96 ; 4 Rich. Eq., 60 ; Code, 112, sub. 6. *Plea of res judicata cannot avail:* Code, sec. 40 ; Rev. Stats., 2053 to 2063 ; 4 S. C., 156 ; Freeman on Void J. Sales, 37 ; 31 S. C., 217 ; 14 S. C., 473 ; 10 S. C., 347 ; 17 S. C., 42 ; 2 Hill Eq., 257 ; 38 S. E. R., 779 ; 8 Ency., 2 ed., 1091 ; 19 Ency. P. & P., 972, *et seq.;* 37 S. C., 161. *Evidence of Jones inadmissible:* 47 S. C., 488. *As to rate of interest:* 1 N. & McC., 248 ; 10 S. C., 133 ; 2 S. C., 248 ; 14 S. C., 341.

March 6, 1903. The opinion of the Court was delivered by

Mr. Justice Jones. The object of this action was to require William W. Jones, as administrator *de bonis non,* with the will annexed, of estate of Thomas J. Dyson, deceased, to account as such administrator, make final settlement and be dismissed, but principally to require the said W. W. Jones to refund to the legatees and devisees moneys alleged to have been overpaid to him by them upon a note held by him against the estate of Thomas J. Dyson, to restrain him from attempting to collect any further sums on said note, and to compel him to cancel the same, and also

to require Sallie F. Jones to pay over to the other legatees and devisees her proportion of the amount paid by them on said note. The main controversy on the merits is as to whether the defendant, Jones, fraudulently added the words "at ten per cent." at the end of the note. The note as it appeared in evidence was as follows: "$725.00. One day after date, I promise to pay to W. W. Jones or bearer, seven hundred and twenty-five dollars, value received. Witness my hand and seal, this 12th February, 1867, at ten per cent. Thomas J. Dyson. (L. s.)" The contention of the plaintiffs was that the words "at ten per cent." were added to the note after the death of Thomas J. Dyson, which occurred May 15th, 1872, and were in the handwriting of Morgan Dyson, a son of Thomas J. Dyson and father of the plaintiffs. · The Circuit Court held that these words were added to the note by W. W. Jones after its execution, and without the knowledge or consent of the maker, and further held that the following payments had been made thereon: September 12, 1867, $168; February 12, 1868, $200; December 6, 1869, $200; February 12, 1884, $58; December 12, 1884, $170; January 1, 1888, $265.20; January 13, 1891, $125; November, 1895, $495. Placing these credits and calculating interest at seven per cent., the Court found that the note has been overpaid by $1,294.87, for which sum a decree was rendered against W. W. Jones in favor of the legatees and devisees of Thomas J. Dyson, and the note ordered to be marked paid. Appellants make no contest as to these credits except as to the credit of $168, September 12, 1867, which will be hereafter noticed.

We will first direct attention to the main point of controversy on the merits, whether the note was fraudulently altered by W. W. Jones so as to draw ten per cent. interest. We construe the note as above copied and containing the words "at ten per cent.," as bearing such rate of interest after maturity. *Piester v. Piester*, 22 S. C., 139. At the time of said note it was lawful to contract for such rate of interest.

On this main issue the Circuit ¡Court said: "As to the note, Mr. Jones testified that he added the words 'at ten per cent.' to the note. His exact words, as I get them from the master's report, are as follows: 'This ten per cent. was made by me in Capt. Dyson's house, in his presence, in his room, before the note was delivered to me.' This testimony was objected to by plaintiff's counsel, under the 400th section of the Code; but I think the objection should be overruled and the answer allowed, because it in no way connects Capt. Dyson with that part of the transaction. Mr. Jones, when recalled, was asked what was his intention in adding those words, and the objection to that question is sustained, because it did connect Capt. Dyson with the transaction, and was inadmissible under the said section of the Code. Several witnesses testified that they believed that the words 'at ten per cent.' were in the handwriting of Morgan Dyson, but I am inclined to the opinion that Mr. Jones ought to know best whether it was his own handwriting or not. He says he put the words there, and I see no reason to doubt him— but there is nothing to show that Capt. Dyson knew that he put them there. There is one thing clear, and that is that Capt. Dyson wrote the body of the note and did not put those words to it; and that fact, that they were put there by another, 'in his house, in his room, in his presence,' does not justify the inference that the maker of the note knew that they were put there. In fact, the very words, 'in his house, in his room, in his presence,' seems to me to be suspicious. The words 'in his presence,' would have done as well to express the idea, and would have been less suspicious. But even if this latter mode of expression had been adopted, there would be still nothing to show that although these words were added to the note in the presence of the maker, that he knew anything about it. He might have known it or he might not have known it, and the burden of proof as to this particular transaction was on Mr. Jones after having assumed the responsibility of saying that he put the words 'at ten per cent.' on

said note. This is not in accordance with the allegations in his answer. He did not attempt to prove the allegations in his answer respecting this transaction; but having attempted to prove how the said words were put thereon, he must stand by what he says; and taking the testimony as it is, the addition of said words to said note has worked a great hardship to the heirs at law and devisees of the maker of the note, Thomas J. Dyson. Much money has been paid on it and more is demanded, under threat of sale of land for that purpose. I am satisfied that Thomas J. Dyson never intended that the note should bear ten per cent. interest, and I am satisfied that he never knew that the words 'at ten per cent.' were added to said note, and I so find, and his estate is not bound thereby. The fact that two years after the note was executed—that is, in 1869—he put a credit on said note, does not alter the case, because there is no proof that he read it over then or even noticed it critically or carefully. I, therefore, conclude and find that Thomas J. Dyson knew nothing of the addition of the words 'at ten per cent.' to said note, and that under the law the said note has borne but seven per cent. interest, and has been overpaid by several hundred dollars, to wit: fifteen hundred and twenty-four 56-100 dollars." By a subsequent decree, dated September 10, 1901, correcting the calculation in the former decree, it was adjudged that the amount so overpaid was $1,294.87.

Before considering the testimony, it may be as well to examine into the competency of the same, to which several exceptions are directed. When defendant, Jones, was examined as a witness, he was asked, "Under what circumstances were those words added?" he answered: "This ten per cent. was made by me in Capt. Dyson's house, in his presence, in his room, before the note was delivered to me." Objection was made to this testimony, under sec. 400 of the Code, but the Court overruled the objection on the ground that the testimony did not connect Thomas J. Dyson, the deceased, with that part of the transaction, and to this ruling the respondents take excep-

tion by way of sustaining the decree. The case also shows the following testimony and objections thereto: "W. W. Jones, recalled, says: Q. Mr. Jones, Mr. Jeff. Dyson says that the words 'at ten per cent.' are in the handwriting of his father, Morgan Dyson. What do you say about that? A. It is not so. They are in my handwriting. These words were added by me in Capt. Dyson's house, in his presence. No interest was specified, and the words were added before the note was handed over to me. Objected to. Objection sustained.) Q. Mr. Jones, state to the Court whether or not, since the delivering of this note to you, you have made yourself or caused any one to make any change or alterations in the note? (Objected to, under sec. 400 of Code, and as not responsive to his answer. Objection sustained.) A. No changes have been made in the note by me or any one else since I had the note. I have had possession of the note since its delivery except while it was in the Court at Edgefield. Q. Mr. Jones, which comes first in point of time, the words 'at ten per cent.' in the note or the indorsement on the back, December 6th, 1869, received $200, part of the within note? (Objected to. Objection sustained.) A. 'At ten per cent.' comes first in point of time. The December 6th, 1869, indorsed, is in Capt. Dyson's handwriting. Q. Mr. Jones, what were your intentions in adding the words 'at ten per cent.?' (Objected to. Objection sustained.) A. My intentions were to carry out the contract and by the direction of Capt. Dyson." We do not think this testimony was objectional, under sec. 400 of the Code, as the plaintiff opened the door for its admission by being examined in his own behalf in regard to such transaction. The plaintiff, Thos. J. Dyson, was a devisee under the will of Thos. J. Dyson, deceased, and for the purpose of showing that the transaction between defendant, Jones, and the deceased did not include an agreement to pay ten per cent. interest, testified that the note was in the handwriting of the testator, Thomas J. Dyson, except as to the words "at ten per cent.," and that these words were in a different hand-

writing, that of Morgan Dyson. The testimony was offered to sustain the charge that defendant, Jones, had fraudulently added, or caused to be added, those words to the contract. It would be rather hard if, under such circumstances, the mouth of one charged with fraud should be closed. Sec. 400 provides for such a situation in the following language: "But when such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or committee shall be examined on his own behalf in regard to such transaction or communication * * * then all other persons not otherwise rendered incompetent shall be made competent witnesses in relation to such transaction or communication on said trial or hearing." *Trimmier* v. *Thompson*, 41 S. C., 131, 19 S. E., 291; *Ellis* v. *Crib*, 55 S. C., 333, 33 S. E., 484. When defendant, Jones, was asked to state whether or not, since the delivery of the note to him, he had ever made, or caused to be made, any changes or alterations in the note, to which he replied in the negative, objection was also made, under sec. 400. This particular testimony was not objectionable, for the further reason that it related to the acts of the witness, W. W. Jones, alone. *Rookhart* v. *Dean*, 21 S. C., 597; *Foggette* v. *Gaffney*, 33 S. C., 311, 12 S. E., 260.

Coming back to the question whether the words "at ten per cent." were added by defendant after the delivery of the note and without the knowledge or consent of Thos. J. Dyson, we are impressed that the Circuit Judge reached his conclusion by accepting Jones' statement that he added the words and excluding from consideration as incompetent his explanation of the circumstances under which it was done. The testimony of Jones shows that these words were added by him in the presence and under the direction of Thos. J. Dyson, as a part of the contract and before the final delivery of the note. It is not suggested by anything in the case that Jones is unworthy of belief, and there is no testimony impeaching his character. It is true, that in his answer in the case he alleges that he

added the words a short time after the execution of the note, in the presence and by the direction of Thos. J. Dyson. This testimony is not wholly consistent with his answer, if the word execution was used in its technical sense as including delivery; but if the word be understood as meaning the writing and signing of the note, there is no substantial inconsistency between the answer and his testimony, as the effect of his testimony was, as we read it, that after the writing and signing of the note by Thos. J. Dyson, Jones observed that nothing was mentioned therein as to interest, and that the · words were added by him in the presence and by the direction of Thos. J. Dyson, before it was finally accepted. The defense consisted not so much as to the time when the words were added, as to whether they were placed there with the consent of the maker of the note; for if the words were added with the maker's consent, the time when they were added would be immaterial. Moreover, it appears in the case that "during the argument of this cause before his Honor, Judge Townsend, defendant's attorney, in response to a suggestion from the attorneys for plaintiffs, that the testimony of W. W. Jones was not responsive to the allegations of his answer in the particulars noted in the testimony, asked his Honor to permit an amendment thereof to conform to the facts proved, if his Honor should conclude that there was any variance between the facts proven and the facts alleged in the answer of the said W. W. Jones, or that the proof was not responsive to the allegations thereof. This was during the argument of the cause, and his Honor at the time made no ruling thereon whatever, and on the conclusion of the arguments stated that he "would take the papers in the cause with him, that he wished to consider the the proof was not responsive to the allegations thereof."

It was also in evidence that the credit indorsed on the note on December 6, 1869, for $200, being the third credit thereon, was in the handwriting of Thos. J. Dyson, and this afforded some evidence not to be ignored, that the words "at ten per cent." (which must, according to

the evidence, have at that time been in the note) were right-
fully there with the knowledge and consent of Dyson. It
furthermore appears in evidence that in 1889, W. W. Jones
filed proceedings in the court of probate for Edgefield, to
sell the lands of the deceased testator in aid of the personal
assets, and the note in question was set forth in his petition
as a debt of the estate and as bearing ten per cent. interest.
The plaintiffs as well as the other legatees or devisees of
Thos. J. Dyson were made parties to such proceeding. The
plaintiff, T. Jeff. Dyson, did not answer in proceedings,
notwithstanding he testified in this case that he knew that
the words "at ten per cent." were in the note at the time of
the probate proceedings, and that he had previously heard
that the note had been changed by the addition of those
words. The plaintiff, Mattie Williamson, a party also to
said probate proceeding, answered by her guardian *ad litem,*
calling for proof as to the note and amount due thereon, and
by her guardian *ad litem* consented to the order adjudging
the amount to be due on said note, and ordering sale of the
realty. The only claim established against the estate in
these proceedings was the note in question, and the probate
court determined that the amount due upon said note on
September 4, 1893, was $734.49, calculating interest at ten
per cent., and allowing the following credits: February 12,
1868, $200; December 12, 1868, $110; December 6, 1869,
$200; February 18, 1884, $58; December 12, 1884, $170;
January 1st, 1888, $265.28; January 13, 1891, $125. One
tract of land was sold under the decree of the probate court
for $200, which was bid in by defendant, W. W. Jones, who
afterwards sold the land for $495, and agreed with the
legatees and devisees to allow his claim to be credited with
that sum. Now, if the judicial ascertainment of the amount
due upon his claim at the date of the decree of the probate
court is not binding upon all the parties to that record as
*res judicata,* a matter to be hereafter noticed, it should at
least afford a very strong presumption or inference in favor
of defendant Jones' version of the transaction with Thos.

J. Dyson.   For these reasons, we think the conclusion of the Circuit Court, that W. W. Jones added the words "at ten per cent." to the note without the knowledge or consent of Thos. J. Dyson, is against the preponderance of the evidence.

The Circuit Court overruled defendant's plea that the matter in controversy was *res judicata* by the said decree of the probate court adjudging the amount due upon said note and decreeing for sale of land in aid of assets to pay said debt, and this ruling is excepted to by appellants.

The conclusion already reached in large measure disposes of the appeal, but we will not decline to consider this matter.   The court of probate is a court of limited jurisdiction, and yet it has very extensive powers conferred upon it, and, of course, the judgments or decrees upon matters within its jurisdiction is as binding upon the parties to the record as the judgment of any Court.   By the Constitution of 1868, in force at the time of the proceedings under consideration, and sec. 37 of the Civil Code, the court of probate had jurisdiction "in all matters testamentary and of administration," and in sec. 40, Civil Code, it is provided, "All proceedings in relation to the settlement of the estate of any person deceased shall be had in the probate court of the county in which his will was proved or administration of estate was granted.   And whenever it shall appear to the satisfaction of any judge of probate that the personal estate of any person deceased is insufficient for the payment of his debts, and all persons interested in such estate being first summoned before him and showing no cause to the contrary, such judge of probate shall have power to order the sale of the real estate of such persons deceased, or of so much thereof as may be necessary for the payment of the debts of such deceased person upon such terms and in such manner as he may think best; may grant orders of injunction to stay actions or proceedings against the executor or administrators of such deceased person, and such other orders as may be necessary to secure the marshalling and administering the

assets of such deceased persons; such proceedings to be by summons and complaint, the practice wherein shall conform as nearly as may be to the form and practice in the Courts of Common Pleas of this State." There is no room for doubt that under these provisions as well as by sec. 2543, *et seq.,* Code, 1902, the probate court has jurisdiction to sell real estate in aid of assets, and may marshal and administer the assets of a decedent. The jurisdiction to sell real estate in aid of assets is founded upon the insufficiency of the personal assets to pay the debts of the decedent, and this fact or condition must be judicially determined before ordering a sale of realty. Such determination must necessarily include an accounting of the personal assets and the calling in of creditors to establish their claims as debts against the estate of the decedent, for it cannot be certainly known that there is insufficiency of personal assets until both assets and debts are ascertained. It is not reasonable to suppose that it was intended to confer power on the probate court to determine the fact of insufficiency and deprive it of all power to determine the extent of the insufficiency, especially in view of the express jurisdiction to marshal and administer assets. It has been decided that the judgment of the probate court as to the necessity of a sale of the realty, and that a sale pursuant thereto is binding upon all parties to the record, even to an exclusion of right of homestead not asserted. *Hodge* v. *Fabian,* 31 S. C., 212, 9 S. E., 820; *Scruggs* v. *Foot,* 19 S. C., 274; *Earle* v. *Earle,* 33 S. C., 504; 12 S. E., 164; *Culler* v. *Crim,* 52 S. C., 574, 30 S. E., 635; *Haddon* v. *Lenhardt,* 54 S. C., 88, 31 S. E., 883. It is contended, however, that the probate court has no power to render a judgment on contract in favor of a creditor against a decedent's estate. This is doubtless true as applied to a direct action upon the contract alone, but it is not true when it becomes proper to judicially determine what debts exist against a decedent's estate in a proceeding to sell land in aid of assets to pay the debts of the estate and to marshal and administer such assets. We are of opinion, therefore, that

the decree of the probate court determining the amount due
on said note at the time of the decree, is binding upon parties
to the record, and cannot be assailed in this action except
upon some ground of equitable cognizance, as fraud, for
example.   We have already determined that there was no
fraudulent alteration of the note as alleged, but we do not
decide that such judgment may be impeached for fraud in
the alleged alteration of the note as distinguished from fraud
in procuring the judgment.   See 16 Ency. Law, 2 ed., 380;
*Crawford* v. *Crawford,* 4 DeSaus. Eq., 176.   The decree
of the probate court is certainly conclusive as to the amount
due upon said note at the time it was established as a debt
against the estate of Thos. J. Dyson, the question of fraudu-
lent alteration being eliminated.   This would be entirely
sufficient to overthrow the finding of the Circuit Court to
which exception is taken, that the note should be credited
with a payment of $168, September 12, 1867.   No such
credit was claimed or allowed in the probate court proceed-
ings.   But if we should now pass upon the propriety of such
credit, we would be compelled to say that the evidence to sus-
tain it is very unsatisfactory.   Miss Narcissa Dyson, a de-
fendant, stated that she gave to defendant, Jones, to be
credited on his note, a note for $168, given by Jones to Thos.
J. Dyson for burial expenses of the wife of W. W. Jones,
who was a daughter of Thos. J. Dyson, and who died in the
fall of 1867.   T. Jeff. Dyson, plaintiff, also states that such
a note was delivered to defendant, Jones, by Mrs. Dyson.
These witnesses do not state the date of the note nor when it
was delivered to Jones, except that it was delivered after the
death of Morgan Dyson, which occurred in 1883.   At the
time William D. Marr was executor of the will of Thos. J.
Dyson, and would doubtless have had possession of said note
if any such existed.   Defendant, Jones, explains that he
never gave Thos. J. Dyson any such note, but that he had
agreed to allow the burial expenses of his wife paid by Thos.
J. Dyson to be credited on said note, and that such matters
were all included in the credit of $170, December 12, 1884,

and that a memoranda of such expenses had been kept in a little note book. There was no claim of any such payment in the complaint. We cannot but believe that if there was any such note against defendant, Jones, which was intended to be credited on his note, it would have been brought to notice in the probate court proceedings.

Under the views we have taken, we do not deem necessary to consider the questions raised as to the statute of limitations nor the remaining exceptions not practically disposed of in the foregoing.

The case stands thus: Defendant, Jones, has a judgment of the probate court establishing his claim against the estate of Thos. J. Dyson for the sum of $734.49, at the date of the decree, September 4, 1893, and this is subject to a credit of $495, the proceeds of the sale of one tract of land sold thereunder, as per the arrangement of the parties to be credited as of November, 1895. Defendant, Jones, should be left free to take whatever legal steps he may be advised to secure payment of the balance due him. We see no reason for retaining the complaint in the Common Pleas for the purpose of a final accounting and settlement of the estate of Thos. J. Dyson, as nothing appears which would make such a course necessary or proper. If any such final settlement and accounting is desired, it may be had in the probate court, where the proceedings to sell land in aid of assets still is pending.

It is, therefore, the judgment of this Court, that the judgment of the Circuit Court be reversed and the complaint be dismissed.