RIDER v. CLARK ET AL.

1. **Partition:** PLEADING: COUNTER-CLAIM. A written agreement executed by an heir, binding himself for a valuable consideration to pay a mortgage on lands of his ancestor, was held not to create a lien upon the interest of the heir in such lands after the ancestor's death, and to have been improperly pleaded as a defense or counter-claim in an action for partition of the land, under chapter 3 of title 20 of the Code.

2. ——: ——: ——. Taxes upon the property, however, the payment of which were assumed by the heir after the ancestor's death, and in consideration of a lease of the property, were held to constitute a lien upon his interest as between himself, or his grantee with notice, and the other heirs, and to be proper ground for counter-claim in such action.

*Appeal from Jones District Court.*

THURSDAY, JUNE 24.

THIS is an action of partition. The petition alleges that Lucy M. Clark died seized of 145 acres of land, leaving as her only heirs the defendant, her husband, and Charles F. and Ezra W. Clark, their sons; that said Lucy, prior to her death, conveyed to said Charles said lands which were intended by her and received by him in lieu of any interest he might be entitled to in the property of said Lucy as heir at law, by reason whereof defendant, as husband of deceased, is entitled to one-half of said property; that plaintiff, by purchase, has become the owner of all the interest of Ezra in said lands, to-wit: the one-half thereof. The plaintiff prays that his right to one-half of said lands be established, and that partition thereof be made.

The defendant filed an answer as follows:

" Par. 1st. Denies each and every allegation of the petition not hereinafter expressly admitted.

" Par. 2d. Admits that Lucy M. Clark died the 8th day of February, 1876; that she was the wife of defendant, the mother of Ezra and Charles Clark, and that defendant and

said Ezra and Charles were her only heirs at law. That she died intestate.

"Par. 3d. Admits that deceased died seized of the lands in the first paragraph of the petition described, subject, however, to the liens and incumbrances hereinafter set out.

"Par. 4th. Denies that said Lucy ever conveyed to said Charles any lands or any property whatever by way of advancement, or in lieu of any interest he might be entitled to in the property in the petition described, or any other property, and alleges that at the time of her death said Charles became and was the owner of the undivided one-third of the lands in the petition described, as the heir of said deceased.

"Par. 5th. That on or about the 25th day of January, 1878, the said Charles conveyed, by quit claim deed, all his right, title and interest in and to said premises to defendant.

"Par. 6th. Denies that plaintiff is the owner of the undivided half of said premises, or of any interest therein whatever.

"Par. 7th. That on or about the 25th day of September, 1877, the said Ezra made to plaintiff a pretended conveyance of the undivided one-third of the lands in the petition described, and on or about December 4, 1877, said Ezra and wife made another pretended conveyance thereof to plaintiff; that no consideration whatever was paid by plaintiff for said conveyances, but they were made by said Ezra to plaintiff and received by him with the intent to cheat and defraud this defendant and said Charles Clark, and the creditors of said Ezra, as will hereinafter more fully appear, as follows, to-wit: That at said time said Ezra was largely indebted, and on and before said 25th day of September, 1877, he was insolvent, and ever has so remained, and has been unable to pay his debts; that on or about the 10th day of November, 1875, the said Lucy and defendant borrowed of F. M. Hicks $1,030, on five years time, and gave their note therefor, copy of which is hereto attached, marked exhibit 'A,' and made part hereof, and secured the same by a mortgage, copy of which is hereto

attached, marked exhibit 'B,' and made part hereof, said mortgage being upon the N $\frac{1}{2}$ SE $\frac{1}{4}$ said Sec. 15; that said money was borrowed by said Lucy and defendant for said Ezra and said Charles, they at the time agreeing to pay said note and discharge said mortgage; that said Lucy and defendant let said Ezra have $530, and said Charles $500 of the money so borrowed of said Hicks, and afterward the said Ezra and Charles, pursuant to the verbal agreement aforesaid, each executed his written agreement to pay off and discharge that portion of the note and mortgage represented by the amount received by him, with interest as aforesaid, copies of which said agreements are hereto attached, marked exhibits 'C' and 'D,' and made part hereof; and they, the said Ezra and Charles, each failed *in toto* to perform his said agreement; that on or about the 27th day of March, 1876, the said Charles and defendant leased to said Ezra the lands in the petition described for the term of three years from the 1st day of March, 1876, the said Ezra in consideration thereof agreeing to pay the taxes accruing on said premises during the term of said lease, and also to pay all claims against the buildings on said premises, said claims being a mechanic's lien in favor of one Burdick for the sum of about $300, a copy of which lease is hereto attached, marked exhibit 'X,' and made part hereof; that said Ezra paid no part of said taxes and paid no part of said claim, but went into possession of said premises under said lease, and was in possession at the time that said pretended conveyances were made by him to plaintiff; that he and plaintiff remained in possession of said premises until the expiration of said lease and received the full benefits thereof, and neither of them nor any one else has ever performed any of the agreements made by said Ezra by the terms of said lease; that all said facts were well known to the plaintiff at and before he took said pretended conveyances from said Ezra, and said pretended conveyances were made by said Ezra and received by plaintiff with the intent and for the purpose aforesaid, and espe-

cially for the purpose of ridding the interest of said Ezra in and to said premises from the claim and lien for his portion of the mortgage debt, and the payment of said mechanic's lien; that said Ezra has permanently removed from the State, and is a non-resident thereof.

"Par. 8th. That on or about the 11th day of December, 1878, the Monticello Bank, the assignee of the said note and mortgage made to Hicks as aforesaid, obtained a judgment against this defendant and Moulton, as administrator of said Lucy, on the said note, and a decree of foreclosure of said mortgage, a copy of which decree and judgment is hereto attached, marked exhibit 'E,' and made part hereof.

"Par. 9th. That on or about the 11th day of January, 1879, said lands so mortgaged were sold at foreclosure sale on said Hick's mortgage to the Monticello Bank for the sum of $1,504.41, being the full amount due on said note and judgment with interest, costs and accruing costs.

"Par. 10th. That said Burdick has foreclosed said mechanic's lien, and judgment has been rendered in this court against said Moulton, as administrator of the estate of said Lucy, for the sum of $327.26, and $        costs, with decree that said lands, thus covered by said lien, be sold to satisfy said judgment, etc., a copy of which is hereto attached, marked exhibit 'F,' and made part hereof, and said judgment is wholly unsatisfied and unpaid.

"(There is no Par. 11th, error in numbering.)

"Par. 12th. That the value of the 65 acres not sold to Monticello Bank as aforesaid, free from incumbrance, is not to exceed the sum of $1,625, and the value of the whole 145 acres is not to exceed the sum of $3,200, the one-third of which is the sum of $1,066.66⅔. That $767.20 of the amount of sale to Monticello Bank, with interest at ten per cent from the date of sale, belongs to said Ezra and the plaintiff to pay, and is a lien and incumbrance upon said land as aforesaid.

"Par. 13th. That said judgment in favor of said Bur-

dick, with interest thereon from December 26th, 1879, together with the costs taxed at          , and the further sum of          , the amount of the taxes paid as aforesaid, both liens on the said 65 acres, also belong to the plaintiff and the said Ezra to pay; that said several sums aggregate more than $1,066.66⅔, the entire one-third in value of all of said lands.   That there never was any personal property, money or credits, belonging to the estate of said Lucy, and is not now, and there are no debts of any kind against her estate except the judgment in favor of Burdick, aforesaid.

"Par. 14th.   That the 80 acres sold at foreclosure sale as aforesaid is worth no more than said sum of $1,504.41, with interest thereon from date of sale.

"Par. 15th.   That by reason of the premises the entire 65 acres, not included in said foreclosure sale, in the petition described, subject to the lien of said Burdick, are much less in value than defendant's interest in and to the lands in petition described, and are, therefore, the absolute property of the defendant.

"Par. 16th.   This defendant further states that 40 of the said 65 acres is, and has for more than twenty years last past, been occupied by this defendant as a homestead, and was so occupied for about twenty years immediately preceding the death of said Lucy.

"Par. 17th.   That by reason of the premises this defendant has the right to the use and occupancy of said 40 acres as a home during his lifetime, irrespective of any claim or right the plaintiff may have thereto."

The defendant also filed a counter-claim, which, from the fourth to the fifteenth paragraphs, both inclusive, is identical with the corresponding paragraphs of the answer.   The remaining paragraphs are as follows:

"Par. 16th.   The defendant further says that he and said Lucy, for about twenty years immediately preceding her death, occupied the 40 acres mentioned in paragragph 16 of the

answer as a homestead, and defendant, since her death, has so occupied it, and it is now his homestead.

" Par. 17th. Wherefore defendant asks that this court set off to him the 65 acres covered by said Burdick's mechanic's lien, and confirm his share thereto, and for such other and further or different relief as shall be deemed just and equitable, and for costs."

The written contract executed by Ezra W. Clark, referred to in the seventh paragraph of the answer, bears date March 28th, 1876, and is as follows:

" Whereas, in the fall of 1875, my parents gave me five hundred and thirty dollars, for which they gave to T. M. Hicks a note secured by mortgage on the north half of southeast quarter of section fifteen, in township eighty-six north, range three west, which note is to be paid in five years, with ten per cent interest paid annually: Now, therefore, I hereby agree to pay said interest and principal as required in said note, to the amount above named, or assume all damages arising from neglecting to do so."

The plaintiff moved the court to strike from the answer all of paragraphs seven to sixteen, both inclusive, for the reason that the matters therein set out are immaterial, irrelevant and redundant. Also to strike out all of the counter-claim, for the reason that the same is only a repetition of the facts stated in the answer, and the same are immaterial, redundant, and a sham defense.

The court sustained the motion as to the 7th, 12th, 14th and 15th paragraphs of the answer, and as to all of the counter-claim after the 3d paragraph except the 16th. The defendant excepted and appeals.

*Herrick & Doxsee*, for appellant.

*J. S. Stacy*, for appellee.

DAY, J.—I.   Section 3277 of the Code is as follows: "The action for partition shall be by equitable proceedings, and no joinder or counter-claim of any other kind shall be allowed therein, except as provided by this chapter." The chapter provides that creditors having liens upon the property may be made parties, and that the nature and amount of general incumbrances by mortgage, judgment, or otherwise, may be determined.   Sections 3281 and 3284.   At the time the mortgage was executed by Lucy Clark and the defendant William Clark, to T. M. Hicks, to secure $1,030 borrowed money, Ezra Clark had no interest in the mortgaged land. The mortgage created a general lien upon the entire property, but no specific lien upon the portion of it which might fall to the share of Ezra Clark upon the death of his mother and partition of the property. The written agreement executed by Ezra Clark, in which he undertook to pay the borrowed money which had been given him, created a personal liability upon his part to his parents, but created no specific lien upon the portion of the real estate which might afterward fall to his share by inheritance.   As no lien was created upon Ezra Clark's interest, in virtue of the written agreement, it follows that his share, or the share of his grantee, of the premises in controversy, cannot be diminished in consequence of the agreement, or made subject to the lien of the mortgage.   If Ezra Clark has failed to pay the debt as he agreed, the demand must be enforced as a personal claim against him.

*1. PARTITION: pleading: counter-claim.*

II.   The taxes assessed against the land became a lien thereon.   The lease attached as an exhibit to the seventh paragraph of the answer shows that Ezra Clark agreed to pay all the taxes accruing against the premises during the continuance of the lease.   The answer alleges that he has failed to perform this agreement, and that all these facts were known to plaintiff before his purchase. As between Ezra and William Clark, Ezra is liable for these taxes, and, as they constitute a lien upon the premises, they

*2. ——: ——.*

should, as between Ezra, or his grantee with notice, and the defendant, be made a specific lien upon Ezra's share of the property. See *Metcalf v. Hoopingardner*, 45 Iowa, 510. The court erred in striking out so much of the answer as pertained to these taxes.

III. The court overruled the motion to strike out the tenth paragraph of the answer, and thus allowed the claim growing out of Ezra Clark's agreement to pay the Burdick mechanic's lien to remain for appropriate adjustment in the final disposition of the case.

IV. It is urged that the court erred in sustaining the motion to strike out the seventeenth paragraph of the counterclaim, which is the prayer for relief. It is claimed by the appellee that it is evident that the court did not intend to include this paragraph. The appellee does not claim that this paragraph should have been included in the order, and as the cause must be reversed for other reasons, this point needs no further consideration. For the error before considered, the judgment is

REVERSED.