7313

### JENKINS v. JENKINS.

1. APPEAL.—ISSUES arising in the settlement of an estate under rule calling in creditors as to the genuineness of the signature to a note presented against the estate are equitable, and findings thereon are reviewable by this Court on appeal.

2. NOTES.—BURDEN OF PROOF that the signature of a note is not genuine is shifted to those so alleging upon showing of *prima facie* case by those alleging its genuineness.

   MR. JUSTICE WOODS *dissents.*

3. IBID.—Finding by Circuit Court, that note was signed by the intestate, reversed.

4. APPEAL.—Where record does not show that any objections were interposed to a motion for leave to serve a case and exceptions after time, grounds expressed in a notice of motion to reverse such order here will not be considered.

Before KLUGH, J., Greenville, April, 1908.    Reversed.

Action by Mettie Z. Jenkins and Nora May Jenkins against J. W. Jenkins, Jr., *et al.* From Circuit order, allowing claim of J. H. Jenkins, plaintiffs appeal.

*Messrs. J. A. McCullough* and *B. M. Shuman,* for appellants, cite: *Order not appealed from can not be reviewed under notice to sustain:* 51 S. C., 313; 54 S. C., 526. *Circuit Judge had power to permit service of case and exceptions after time:* 49 S. C., 374. *Burden was on those presenting the note throughout:* 33 S. C., 190; 1 Green. Ev., sec. 74.

*Mr. J. J. McSwain,* contra, cites: *Insufficiency of expert testimony:* 41 S. C., 191; 33 S. C., 116; 24 S. C., 296; 18 S. C., 507; Moon on Facts, secs. 603, 604, 607, 610, 615, 663. *The issue is one of law:* 44 S. C., 370; 16 Cyc., 114; 55 Am. Dec., 439; 12 S. C., 108. *Burden of proof is on appellant:* 62 S. C., 424; 18 S. C., 362; 44 S. C., 431; 42 S. C., 82, 475. *Weight of testimony is for trial Judge:* 42 S. C., 283; 77 S. C., 414. *Burden of proof in cases of forgery:* Abb. Trial Ev., 1003, 482, 610; 16 Cyc., 932-934.

October 13, 1909. The opinion of the Court was delivered by

MR. JUSTICE GARY. The main question in this case is whether a certain note was signed, as appears upon the face thereof.

J. W. Jenkins departed this life intestate, on the 31st of March, 1907, and this action was commenced on the       day of October, 1907, for the purpose of settling his estate.

In pursuance of an order requiring creditors to prove their claims before the master, the defendant, J. H. Jenkins presented a note, of which the following is a copy:

"$600.00.                    Greenville, S. C., Oct. 30, 1906.

December 1st, after date, we, or either of us, promise to pay to J. H. Jenkins or order, negotiable and payable at

Greenville, S. C., without offset, six hundred dollars, value received, with interest from date at the rate of eight per cent. per annum; said interest to be paid annually, and if not so paid to become principal and draw interest at the same rate.   In case this note is collected by an attorney, by suit or through court, we also agree to pay all cost and expenses, including ten per cent. attorney's commissions.

  P. O. MAULDIN.       J. W. JENKINS.
 Due December 1, 1907."

The appellant, and the guardian of the infant defendants, "denied the validity of the note, and denied that said J. W. Jenkins signed or executed the same."

The master in his report says: "The only issue involved is the execution and delivery of the note in question.   After argument of counsel and the closing of the reference, on the 15th day of January, 1908, the master was so impressed with the importance of having the benefit of the testimony of experts on handwriting, in order to arrive at a correct and safe decision as to the genuineness of the signature in question, that he suggested that the reference be reopened and expert testimony of this character be taken.   With consent of counsel other references were held, and the testimony of five cashiers and tellers of four banks of the city of Greenville were taken.   After careful consideration of the testimony, as well as the manner and bearing of the witnesses on the witness stand, I am satisfied that the signature of the note in question was never written by J. W. Jenkins, and is, therefore, not genuine.  This decision has been arrived at, not only by the testimony of the living witnesses, and their manner and bearing on the witness stand, but also by careful inspection, under a magnifying glass, of the signature in question, and comparison to it with the many signatures of said J. W. Jenkins, admitted to be genuine, brought in evidence.   J. W. Jenkins, as shown by these signatures, wrote his name heavily, but with rapidity and ease, showing steady movements of the wrist and unhesi-

tating marks and lines.    The signature in question is heavy, but has the appearance of having been made so by shading the letters after they were written.    It has the appearance of having been written slowly and with nervous hesitation.

"Just after making the letter n, before k, in Jenkins, the writer either lifted his pen from the paper or hesitated, as is shown by the plainly discernible dot to the stem of the k. It has a loop at the top, just like the loop to the stem of the k in the body of the note in question, admitted to have been written by the claimant, J. H. Jenkins.    None of these peculiarities appear in the admitted signatures of J. W. Jenkins put in evidence."

His Honor, the Circuit Judge, in a formal order, reversed the master's findings of fact and conclusions of law.

From this order the plaintiffs appealed.

The first question that will be considered is whether the findings of fact by his Honor, the Circuit Judge, are subject to review by this Court.    The Court, in the exercise of its chancery powers, unquestionably had jurisdiction to administer the assets of the said estate.    Incidental to the exercise of such jurisdiction was the power to require creditors to prove their claims against the estate, and if deemed advisable to enjoin them from proceeding elsewhere.    *Thomson* v. *Palmer,* 2 Rich. Eq., 32.    Under such circumstances, issues arising during the progress of administration must be regarded as equitable in their nature, and, therefore, reviewable by this Court.

The next question that will be considered is whether there was error in ruling "that forgery of the note would not be presumed, and that the burden was upon the objectors to the alleged note to prove, by the preponderance of the evidence, that the same was forged."

The burden of proof did not rest upon the objectors until the defendant, J. H. Jenkins, made a *prima facie* showing that the note was signed by J. W. Jenkins.    *Thames* v.

*Rouse,* 82 S. C., 40. But as such showing was made, the ruling was not prejudicial to the rights of the appellant.

We proceed to the consideration of the question, whether the preponderance of the evidence is against the finding of fact by the Circuit Judge, that the note was signed by J. W. Jenkins.

In addition to the findings of fact by the master, there are several other circumstances which satisfy us that the Circuit Judge erred in sustaining the exceptions to the master's report.

1. The fact that J. H. Jenkins had the blank note in his pocket.

2. The preponderance of the evidence, which showed that J. W. Jenkins was not at Greenville on the day the note is alleged to have been signed.

3. The silence of J. H. Jenkins as to the existence of his claim, under the following circumstances brought out during the examination of the plaintiff, Nora Jenkins:

"Q. Were you present the day letters of administration were granted Mrs. Mettie Jenkins? A. Yes, sir. Q. Did you hear the conversation between the probate judge and parties present, as to the indebtedness of your father's estate? A. Yes, sir. Q. I will ask you whether or not the question was asked in the presence of J. H. Jenkins and yourself and Mrs. Mettie Jenkins, and also to whom, if there was any other indebtedness against the estate, other than the Caldwell note? A. Yes, sir. Q. Did Mr. Jenkins make any reply? A. Yes, sir. Q. What was his reply? A. That he didn't think he owed any except the $3,000."

4. The failure to give notice that he held the note until the 5th of November, 1907.

5. The fact that he was indebted to J. W. Jenkins at the time the note is alleged to have been executed.

The only other question is raised by the respondent's attorneys.

The attorneys for Mettie Z. Jenkins, and for the heirs at law of J. W. Jenkins, failed to serve a proposed case and exceptions within thirty days after service of the notice of intention to appeal. Thereafter said attorneys served notice that they would make a motion before his Honor, Judge Prince, for an order extending the time, which was granted. The attorney for J. H. Jenkins gave notice of intention to appeal from said order. He also gave notice that he would move to sustain the order of his Honor, Judge Klugh, and to reverse the order of his Honor, Judge Prince, upon certain grounds set out in the notice of motion. It does not appear from the record that the attorney for J. H. Jenkins interposed any objection to the last mentioned order, nor does the record disclose the grounds of objection when the motion was made. Therefore, the grounds mentioned in the notice, upon which the attorney for J. H. Jenkins makes the motion in this Court, to reverse the order of Judge Prince, are not properly before this Court for consideration.

It is the judgment of this Court that the judgment of the Circuit Court be reversed.

·MESSRS. CHIEF JUSTICE JONES *and* JUSTICE HYDRICK *concur in the result.*

MR. JUSTICE WOODS, *concurring and dissenting.* I concur in the opinion that this Court has jurisdiction to review the findings of fact by the Circuit Judge, as to whether J. H. Jenkins had forged the signature of J. W. Jenkins to the paper presented to the master as a note of J. W. Jenkins.

The action was brought for partition, and for the settlement of the estate of J. W. Jenkins, and, therefore, the issue of fact, as to the genuineness of the signature to the note, was not "an issue of fact in an action for recovery of money only, or of specific real or personal property,"

and did not fall under section 274 of the Code of Procedure, requiring issues of facts arising in such cases to be tried by a jury.

It is contended, however, that even in a case of this character the issue as to the genuineness of the paper presented as a note of the intestate was cognizable solely by a court of law and could not be tried in the court of equity. The rule laid down in *Adickes* v. *Lowry,* 12 S. C., 97, has been restated in many cases as the settled law of the State. In speaking of an equitable defense set up to an action to recover possession of land, the Court says: "Such defense is equitable in its nature and belongs to that side of the Court which exercises the chancery jurisdiction. Under the former practice such defense could not have been set up in the action at law to try the title and recover possession. The defendant would have been obliged to file his bill in equity to restrain proceedings at law, and to seek such other relief as in equity he might have a right to demand. Under the Code of Procedure all this may be effected by the pleadings in a single action, and new parties, if necessary, may be brought in; but at the trial the legal and equitable issues must be distinguished and decided by the Court in the exercise of its distinct functions as a court of law and a court of equity, and only those are determinable by a jury which are properly triable by jury, while those which would formerly have been properly triable in equity must be determined by the Judge in the exercise of his chancery power." It follows that the jurisdiction of this Court to review the finding of the Circuit Court depends on whether the issue as to the validity of the note would have been properly triable in a case of this kind by the court of equity. On this there can not be the slightest doubt. No jurisdiction of the Court of equity was better established than to entertain suits by executors and administrators or creditors for the settlement of estates, including the ascertainment and adjudication of all claims against the estate,

and the application of the assets to them.　Story's Equity, secs. 544, 545, 549; Pomeroy's Equity, sec. 156.

This jurisdiction of the court of equity under the old practice was continually exercised, and was so familiar that the courts of this State have rarely had occasion to allude to it.　The point was expressly decided, however, in *Brown* v. *McDonald,* 1 Hill's Ch., 297, and *Chalmers* v. *Kinard,* 38 S. C., 126, 16 S. E., 788; and in the recent case of *Dyson* v. *Jones,* 65 S. C., 308, 43 S. E., 667, this Court reviewed the findings of fact of the Circuit Court, made in the exercise of its equity jurisdiction, as to the validity of a claim against an estate which had been brought into the Court for settlement.　This jurisdiction of the court of equity is also recognized in *In Re Covin's Estate,* 20 S. C., 471, and in *In Re Solomon's Estate,* 74 S. C., 189, 54 S. E., 207.

There are, it is true, numerous cases, mainly of partition and foreclosure, in which the Court has held, that when in an equitable action a defendant sets up an exclusive, independent title to land, or personal property, a legal issue is raised not cognizable by the court of equity.　Such cases are *Chapman* v. *Lipscomb,* 18 S. C., 222; *McGhee* v. *Hall,* 23 S. C., 388; *Sale* v. *Meggett,* 25 S. C., 72; *Marshall* v. *Pitts,* 39 S. C., 390, 17 S. E., 831; *Osborne* v. *Osborne,* 41 S. C., 195, 19 S. E., 494; *Johnson* v. *Johnson,* 44 S. C., 364, 22 S. E., 419; *Bank* v. *Peterkin,* 52 S. C., 236, 29 S. E., 546; *Holliday* v. *Hughes,* 54 S. C., 155, 31 S. E., 867. But these cases do not affect the question here involved; for while the court of equity, as we have seen, always exercised the jurisdiction to adjudicate the validity and amount of claims presented against an estate brought into Court for settlement, it held, with the same uniformity, that it would not attempt to try the title to land or personal property, where the parties claimed by distinct titles.　*Edings* v. *Whaley,* 1 Rich. Eq., 301; *Gibbes* v. *Elliott,* 5 Rich. Eq., 327, 3 Pomeroy, sec. 425.　The exceptions to this rule, where the title was only incidentally involved, and where

the property consisted of slaves, are of no consequence in this discussion.

From these considerations, it is clear that, in passing on the validity of the claim, the Circuit Court was exercising its chancery jurisdiction, and its finding of facts is reviewable by this Court.

I concur also in holding that the finding of fact, that the note was signed by J. W. Jenkins should be reversed.

I dissent, however, from the proposition that after a *prima facie* showing by the claimant, J. H. Jenkins, as to the genuineness of the note, the burden of proving that it was not signed by her intestate shifted to the administratrix. When J. H. Jenkins set up the note, as an indebtedness of the estate of J. W. Jenkins to himself, he assumed the burden of proving that the paper presented was the note of J. W. Jenkins; and that burden remained on him from the beginning to the end. On this point, I adhere to the views expressed in *Thames* v. *Rouse,* 82 S. C., 40.

The appeal of respondent from the order of Judge Prince, allowing the appellants further time in which to perfect the appeal, by serving the case and exceptions, can not avail the respondent. Even if the order of Judge Prince be regarded a nullity for want of jurisdiction, no motion was made in this Court to dismiss the appeal, and the Court would not dismiss it without such motion.

I concur in the judgment of reversal.