## 7411

### *EX PARTE* WILSON.

### *IN RE* WILSON v. GORDON.

1. The scope of this action was sufficiently enlarged by the proceedings to permit an adjudication on rule · of the application of the interest of a distributee to a debt due by her to the estate.
2. Equity.—An issue involving the right of the estate under settlement to retain of a distributee's share an amount sufficient to pay her debt to the estate· is in equity and not triable by a jury.
3. Evidence—Partnership.—It may be shown that one is a member of a firm by showing: (1) that he has held out himself as such or that it has been done by others with his consent, and (2) this was known to the person seeking to hold him liable.
4. Partnership—Notes.—Giving and receiving a note executed in a partnership name and nothing more shows an intention to bind the partnership even in the hands of the payee after due.
5. Ibid.—Retainer—Estates.—In the settlement of an estate the interest of a distributee may be retained to liquidate a debt due the estate by a partnership of which the distributee was a member and the only member before the Court.
6. Equity—Ibid.—Limitation of Actions.—A debt of a distributee to an estate barred by statute may be paid out of the share of the distributee under the doctrine of equitable retainer.

Before Klugh, J., Abbeville, January, 1909. Affirmed.

Petition by M. Harvey Willson *et al. In re M. Harvey* Wilson *et al.* against Evans Gordon *et al.*

From decree herein, Mrs. Jane W. Crymes appeals.

*Messrs. Martin & Earle,* for appellant, cite: *Issues that may be determined in partition:* 30 Cyc., 231; 95 U. S., 714; 24 Ency., 463; 25 Ency., 5034, 500; 54 S. C., 404. *Where accounting may be had:* 4 Pom. Eq. Jur., 1420-21; Ency. P. & P., 93, 94, 96 *Necessary pleadings:* 1 Ency., P. & P., 97, 99. *Note is not a proper subject of set off:* 53 S. C., 593; 25 Ency., 488-9, 500; Chev. L., 50; Pom. C. R., 275. *Necessary parties are not before Court:* 25 Ency., 519, 521; Chev. L., 500; 3 S. C., 352; 3 S. C.,

354; Code of Proc., 171; 30 S. C., 119; 55 S. C., 540; Pom. R., secs. 757, 756, 762. *No sufficient ground for equitable interposition:* 19 Ency., 719; 30 S. C., 128; 25 Ency., 543, 542; 19 Ency., P. & P. 764. *Note is not within the scope of the partnership:* I Bail, 561; 14 S. C., 620; 68 S. C., 198; 22 Ency., 136, 138; 30 Cyc. 477, 487-90, 510-11; 22 Ency., 144-7; 9 Enc. Ev., 556, 557; 2 Rich., 587; 26 S. C., 514. *Proof of partnership:* Wig. on Ev., sec. 1624; 9 Ency. Ev., 547; 18 S. C., 223.

*Mr. Wm. N. Graydon,* contra, sites: *Administrator may require appellant to account for what she owes estate:* 16 S. C., 216; 77 S. C., 115.

January 8, 1910. The opinion of the Court was delivered by

Mr. Chief Justice Jones. This is an appeal by Mrs. Jane W. Crymes, defendant, from a decree of Judge J. C. Klugh, rendered January 30, 1909, upon a petition and rule to show cause why the interest of Mrs. Crymes in the proceeds of land sold as part of the estate of Jane L. Gordon, deceased, should not be applied to the payment of certain debts alleged to be due by Mrs. Crymes to the estate of Jane L. Gordon. Mrs. Crymes answered setting up claim to all the property real and personal of Jane L. Gordon under an alleged agreement between Jane. L. Gordon and her sister, Mary W. Gordon, to execute mutual wills so that, upon the death of the survivor, the entire property of both should go to Mrs. Crymes and her children. The children of Mrs. Crymes and H. C. Wilson, executor of the will of Mary W. Gordon, were made parties in accordance with the prayer of the answer. The answer further prayed for specific performance of said alleged agreement to execute mutual wills, and that the administrator of Jane L. Gordon be required to turn over all the personal property in his hands, and for all other proper relief in the premises. Special

Judge J. E. McDonald sustained the contention of Mrs. Crymes, and adjudged her and her children to be equitable owners of the estate of Jane L. Gordon, and that they were entitled "to an amount of the personal estate which has come, or may hereafter come, into the hands of the plaintiff, M. Harvey Wilson, as administrator of the estate of Jane L. Gordon, deceased." It thus appears that at the instance of Mrs. Crymes, the scope of the original action was so enlarged as that it would not be improper to include adjustment of her indebtedness to the estate of Jane L. Gordon sought to be partitioned. On appeal to the Supreme Court, the decree of Judge McDonald was reversed, and the case remanded for further proceedings consistent with the opinion of the Court: 73 S. C., 157, 53 S. E., 79. The lands were afterwards sold, and the proceeds went into the hands of the master. By a subsequent decree of Judge Purdy, other claimants as ultimate remaindermen under the eighth clause of the will of R. C. Gordon were made parties, and their rights adjudicated, resulting in holding the administrator of Jane L. Gordon liable to account to such claimants for proceeds of certain household articles that went into his hands as administrator, 81 S. C., 413, 61 S. E., 85, showing the broad scope which this case assumed. The decree of Judge Purdy, from which Mrs. Crymes did not appeal, also directs the master to hold the one-twelfth interest of Mrs. Crymes in the proceeds of the land subject to the further order of the Court, and recites that a petition has been filed seeking to subject such interest to the payment of an alleged debt, and allowing the petitioners to proceed herein to establish said claim, and apply for such orders as may be necessary or proper.

From the foregoing statement, it seems clear that the judgment of the Circuit Court should not be disturbed on the ground that the relief granted was not within the scope of the action. *In re* Estate of Permelia Bugg, 71 S. C., 440, 51 S. E. 263.

The contention that the establishment of the claim against appellant was a denial of the right of a trial before a jury cannot be sustained. This was not "an issue of fact in an action for the recovery of money only, or specific real or personal property" requiring trial by jury, but was a strictly equitable issue, involving the ascertainment of the extent of the right of an estate under settlement to retain from appellant's interest therein the amount due by her to the estate. *Hughes* v. *Kirkpatrick,* 37 S. C., 169, 15 S. E., 912; *Jenkins* v. *Jenkins,* 83 S. C., 537, 65 S. E. Rep., 736.

The petition alleged, and the testimony shows that immediately after the death of Mrs. Jane L. Gordon, appellant took possession of a note dated February 20, 1895, purporting to be executed by H. C. Wilson & Co. for $1,367.46, payable one day after date to the order of Jane L. Gordon, and it appears that she kept said note in her possession until the hearing in this proceeding. Judge Klugh found, as a matter of fact, that appellant was a member of the partnership of H. C. Wilson & Co., and liable for the balance which he ascertained to be due on said note after credits at the date of his decree viz., $1,676.82. Exception taken to the ascertainment of the amount due on the note has been withdrawn, but it is contended that the finding that appellant was a member of the said partnership is without sufficient evidence to sustain it.

After reviewing the testimony, we cannot say that the conclusion of the Circuit Court is against the preponderance of the evidence. Appellant in her direct testimony stated that she and H. C. Wilson, her son-in-law, never had a partnership contract, verbal or written; that she put no money in the business of H. C. Wilson & Co., received no profits, and was not called on to pay any losses. On cross-examination in answer to the question, "Who composed the firm of H. C. Wilson & Co.," she answered: "I don't know exactly. He may have used my name, the supposition was

29—84

that I was a member of the firm of H. C. Wilson & Co."
There was uncontradicted evidence that the day after the
burial of Jane L. Gordon, appellant told witness, W. J. Mil-
ford, "that she had her note," and the testimony shows that
there was no other note signed by appellant or H. C. Wil-
son & Co. In a letter to the administrator the appellant
wrote: "So I told Mr. Milford I would take the note (I
didn't steal it), and he might tell the administrator about it,
whoever he may be." The solicitude of appellant to secure
possession of the note, which she called her note, and which
purported to be executed by a partnership, of which she was
aware the community supposed her to be a member, afforded
some evidence that she knowingly permitted herself to be
held out as a partner. Partnership may be shown by cir-
cumstantial evidence "in an action by a third person against
alleged partners, according to the rules elsewhere stated, it
is sufficient to establish their liability to show the admissions
of such fact by the alleged partners or that they held them-
selves out to the public as such." 3 Elliot on Ev., sec. 2546.
In sec. 2557 the same author says: "Proof by holding out—
nature and degree. No absolute rule can be given as to the
quantity or degree of proof necessary in such cases. But in
such cases it is not necessary to prove an actual existing
partnership between the persons sought to be charged. An
apology for a general rule may be found in the statement that
the proof is sufficient to render a party liable as a partner
when it shows that he so acted and conducted himself
toward the public as to induce a reasonable person to deal
with him in the honest belief that the partnership really
existed. In such cases it is not necessary to prove that the
party holding himself out as a partner shares in the profits
or losses, as this can in no way affect the person acting on·
the belief that he is in fact a member of the firm. Mr.
Lindly states that in order to render a person liable on the
ground that he has been held out as a partner, two things
must appear: (1) The act of holding out must have been

done either by him or with his consent; (2) It must have been known to the person seeking to hold him liable. The reasons for this are stated thus. In absence of the first of these requisites whatever may have been done, cannot be imputed to the person sought to be made liable. And in the absence of the second, the person seeking to make him liable has not in any way been misled."

The conduct and admissions of appellant in this case is evidence of the first requisite, and the testimony as to what was generally known in the community as to the partnership, affords some evidence that it was also known to Jane L. Gordon, living in the same community, and therefore, is some evidence of the second requisite. On this point M. Harvey Wilson, brother of the appellant, was asked the question: "Who was known around Williamston as composing the firm of H. C. Wilson & Co?" and over objection was allowed to answer: "H. C. Wilson and my sister (appellant) were so known." This was objected to as hearsay. The general rule is that "proof of general reputation is not ordinarily admissible for the purpose of establishing partnerships." Elliott Ev., sec. 2560, and cases cited. The testimony was admissible and relevant, however, to show the second requisite above stated, i. e., that Jane L. Gordon, when she received the note from H. C. Wilson signed H. C. Wilson & Co., knew that appellant permitted herself to be held out as a member of the partnership. Quoting further from Elliott Ev., sec. 2560: "It (proof by reputation) was also held admissible in connection with evidence that such report or reputation was known to the parties sought to be charged," citing *Gaffney* v. *Hoyt,* 2 Idaho, 184.

Appellant also contends that there was no evidence that the note was executed by H. C. Wilson & Co., but without going into details, we think there is ample evidence of the fact of execution.

Nor can we sustain the contention that the note was the private obligation of H. C. Wilson, and was not within the

scope of the alleged partnership. The giving and receiving of a note executed in a partnership name shows that the intention was that the partnership should be bound. "When a negotiable instrument is made by a member of trading partnership a presumption of authority to bind the firm arises." 9 Enc. Ev., 556. This is not only true when the note is transferred before maturity, *Hawes* v. *Dunton,* 1 Bail, 140; *Duncan* v. *Clark,* 2 Rich., 587, but is also true when such note is in the hands of the payee, for the giving of such notes is ordinarily within the scope of a trading partnership. *Hull* v. *Young,* 30 S. C., 125, 8 S. E., 695, 3 L. R. A., 521.

There was no evidence that the payee had any knowledge of any limitations on the power of Wilson to bind the partnership by note, and no evidence that she knew that the money was not intended for the use of the partnership, nor was there any evidence that the money was not used in the partnership business.

It is further excepted that the indebtedness cannot be set off against her interest in the estate for lack of mutuality of demands and identity of parties.

This, however, is not an ordinary action involving claim and conterclaim in the strict sense, but in an action involving an accounting and equitable right to retain from the distributive share the amount of the distributee's indebtedness to the estate. *Wilson* v. *Kelly,* 16 S. C., 218; *Bobo* v. *Vaiden,* 20 S. C., 260; *Small* v. *Usher,* 77 S. C., 115, 57 S. E., 623.

Such equitable right of retainer is not affected by the fact that appellant's liability to the estate is as a member of the partnership and joint with R. C. Wilson, the other partner. It appears, however, that while R. C. Wilson was a party to the original proceeding, he was not served with the rule to show cause, and was at the time a resident of another State.

Appellant also relies upon the statute of limitations as a bar, it appearing that the note was dated February 20,

1895, that the last credit thereon was made December 1, 1901, and that the original action was commenced in 1903, and the rule in this proceeding was served in July 1908.

But even if the right of action upon these facts should be regarded as lost by operation of the statute of limitations, the equitable right of retainer is not affected thereby, so long as the debt has not been discharged. *Wilson* v. *Kelly, supra.*

We have not attempted to consider the numerous exceptions in detail, or in their order, but the foregoing conclusions control all the grounds of appeal.

The judgment of the Circuit Court is affirmed.

Mr. Justice Gary *was disqualified from sitting in this case.*