No. 21,432.

W. R. WILSON and CLARA I. JORDAN, *Appellees*, v. S. P. CHAN-
NELL et al. (THE RUSH MANUFACTURING COMPANY, *Ap-
pellant*).

SYLLABUS BY THE COURT.

1. DESCENTS AND DISTRIBUTIONS—*Indebtedness of Heir to Ancestor—
Equitable Distribution of Estate.* An indebtedness owing by an heir
to his ancestor, remaining unpaid on the final settlement of the estate,
constitutes an equitable lien upon such heir's distributive share of the
real property belonging to the estate, superior to the lien of a judg-
ment existing and docketed against him at the time of the death of
his ancestor; and, after such final settlement, the interests of the other
heirs in the real property are paramount to the lien of the judgment
creditor.

2. SAME—*Statute of Limitations.* Such a claim as that mentioned in
paragraph 1 of this syllabus is not affected by the statute of limitations.

Appeal from Cowley district court; OLIVER P. FULLER, judge.
Opinion filed April 6, 1918. Affirmed.

*C. T. Atkinson*, of Arkansas City, for the appellant.

*W. L. Cunningham*, and *H. S. Hines*, both of Arkansas City,
for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: Defendant The Rush Manufacturing Com-
pany appeals from a judgment in favor of the plaintiffs quiet-
ing title to real property in Arkansas City. Martha A. Wil-
son died intestate owning the real property in controversy and
owning personal property of the value of about $60. She left
surviving her, as her heirs, H. O. Wilson and the plaintiffs,
W. R. Wilson and Clara I. Jordan. H. O. Wilson was indebted
to Martha A. Wilson, at the time of her death, in a sum equal
to more than one-third of the value of the real property. That
indebtedness had been due for more than three years prior to
her death. Some time prior thereto, defendant The Rush
Manufacturing Company recovered a judgment in the district
court of Cowley county against H. O. Wilson for $192.15, and
costs $163.25. At the time of the commencement of the pres-
ent action, the estate of Martha A. Wilson had been fully ad-
ministered and closed as provided by law.

The final order of distribution made by the probate court contains the following:

"The court further finds that the said Martha A. Abshear [Martha A. Wilson] left surviving her as her only heirs the said W. R. Wilson (sometimes called W. Robert Wilson) of Arkansas City, Kansas, H. O. Wilson of Arkansas City, Kansas, and Clara I. Jordan of Sommers, Arkansas, and that the said H. O. Wilson, at the time of the death of the said Martha A. Abshear, his mother, and ever since was and has been indebted unto her and unto said estate in the sum in excess of any interest which he might have therein, and that by reason thereof, he has no interest in said estate, and had no interest at the time of the death of his said mother, that said H. O. Wilson has quitclaimed all of his right and title in and unto all of said real estate and disclaimed any interest in and unto all personal property, in full settlement and liquidation of the claim which said estate had against him, and is fully released and discharged therefrom, and has no interest and had no interest at the time of the death of his mother in her estate.

"It is therefore considered, ordered and adjudged by the court that the said W. R. Wilson and Clara I. Jordan are the sole heirs of the deceased, and the sole owners of said estate and property both real and personal, and that all other persons here and after claiming or pretending to claim an interest in said estate be forever barred."

The plaintiffs claimed to be the owners of all the real property in controversy and claimed to be in possession thereof. The Rush Manufacturing Company set up its judgment against H. O. Wilson, and claimed that the judgment was a lien on the real property inherited by him.

1. Did the judgment in favor of the Rush Manufacturing Company become a lien on the real property inherited by H. O. Wilson, prior to any claim of the estate of Martha A. Wilson, on account of the indebtedness to her from H. O. Wilson, and for that reason, prior to any claim or interest in the property held by the plaintiffs? Some observations concerning undisputed principles of law may assist in correctly answering this question. By section 7320 of the General Statutes of 1915, a judgment of the district court is a lien on the real estate of a judgment debtor within the county in which the judgment was rendered. This lien attaches to the interest of the judgment debtor, and to nothing more. An heir has no interest in his ancestor's real property; but, when the ancestor dies intestate, that property descends at once to the heir. Advancements are recognized by statute and must be

considered in the final distribution of the estate of the deceased person.

There are two lines of authorities concerning the right of a creditor to look to the real property inherited by his debtor, where that debtor owed his ancestor an amount in excess of the value of the property inherited. Each line of authorities is supported by good reasoning. The leading case supporting the right of the creditor as against the estate is *Marvin v. Bowlby,* 142 Mich. 245. After citing and analyzing numerous decisions on this question, the Michigan court said:

"We therefore hold that the distributive share of the real estate of an heir, debtor to the estate of his ancestor, is not chargeable with such indebtedness either as against the land or the proceeds of the sale thereof in the hands of the administrator; that such indebtedness is to be collected by proceedings brought the same as for collecting any other indebtedness due the estate." (p. 256.)

Probably the best-considered case on the other side is *Stenson v. H. S. Halvorson Co.,* 28 N. D. 151, where it was held that an indebtedness owing by an heir to the estate constitutes a prior equitable lien on the heir's distributive share of the real estate, as against the liens of judgments docketed against him. The court said:

"With due deference to the opinion of the Michigan court, we think the great weight of authority, as well as the better reasoning, is opposed to its holding in *Marvin v. Bowlby,* 142 Mich. 245." (p. 159.)

The facts stated in *Stenson v. H. S. Halvorson Co.* are very similar to the facts in the present case. In the Stenson case the contest was over real property, between creditors of a debtor heir and another heir of their common ancestor to whom the judgment debtor was largely indebted. The county court, the court having jurisdiction in North Dakota, directed that the judgment debtor's distributive share of the estate be applied on his indebtedness to that estate; and the supreme court held that the county court had jurisdiction to make such an order, and cites *Holden v. Spier* 65 Kan. 412, 70 Pac. 348, where this court said:

"The probate court, having jurisdiction to make settlement and distribution of a decedent's estate, may determine the share of each distributee, and to that end can inquire into and determine the indebtedness of the distributee to the estate and order a deduction of the same from his share." (syl. ¶ 1.)

This principle was followed in *Head v. Spier*, 66 Kan. 386, 71 Pac. 833, where this court further said:

"The heirs of a decedent, whether lineal or collateral, take their distributive share of the estate subject to all existing equities in favor of the estate against them personally and against any of those through whom they inherit." (syl.)

These Kansas cases follow the same reasoning as that found in *Stenson v. H. S. Halvorson Co.,* but both Kansas cases arose over the distribution of personal property. A number of cases make a distinction between personal and real property, so far as the application of the principle now being discussed is concerned. There is no substantial justification for a less equitable rule in favor of the estate, so far as real property is concerned, than there is for the rule, acknowledged by almost all the authorities, concerning personal property. If, in the distribution of personal property, a distributee who is a debtor of the estate gets an advantage over the other distributees, because his debt is not deducted from his distributive share, then the inheritor of real property likewise gets an advantage over the other inheritors if his debt to the estate cannot be in some way deducted from the share of real property which he receives. The equities which compel the rule concerning personal property are just as strong in favor of the same rule concerning real property.

The statute under which the North Dakota case was decided reads:

"The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the county court and to the possession of any administrator appointed by that court for the purpose of administration." (Revised Codes of North Dakota [1905], § 5186.)

The language used in the North Dakota statute is different from that used in ours; but the result is the same. With us, personal property descends to the heir the same as real property, with this exception, that the administrator must take possession of the personal property and use that property first for the payment of the debts of the decedent. The administrator may sell the real property for the payment of those debts, if there is not sufficient personal property.

The court concludes that the indebtedness of H. O. Wilson should, in some way, be deducted from his distributive share

of the real property, and concludes that the rights of the estate, and, therefore, the rights of the plaintiffs, are paramount to the lien of the Rush Manufacturing Company. This conclusion is supported by numerous decisions, and by a note found in 7 A. & E. Ann. Cas. 564, also by 11 R. C. L. 247.

2. It may be contended that the claim of the estate against H. O. Wilson was barred by the statute of limitations. In *Holden v. Spier,* 65 Kan. 412, 70 Pac. 348, this court said:

"The equitable right to retain the debt of a distributee from his distributive share is not affected by the lapse of time, and the deduction of the debt should be made, although an action to recover the same would be barred by the statute of limitations." (syl. ¶ 2.)

(See, also, *Goodnough v. Webber,* 75 Kan. 209, 88 Pac. 879.)

The statute of limitations cannot be set up to defeat the rights of the plaintiffs.

The judgment is affirmed.

JOHNSTON, C. J., PORTER, and WEST, JJ., dissent.