C. F. WOODS et al., Appellees, v. J. F. KNOTTS et al., Appellants.

**DESCENT AND DISTRIBUTION:** Rights and Liabilities of Heirs—
1 Setting Off Debts. The indebtedness of an heir to the estate of an intestate may be set off against said heir's interest in the real property belonging to the estate (1) *when there is no personal estate, and (2) when the heir is insolvent.*

**DESCENT AND DISTRIBUTION:** Rights and Liabilities of Heirs—
2 Barred Claims. Whether a claim against an heir which is barred by the statute of limitation may be set off against the heir's interest in the estate, *quaere.*

**DESCENT AND DISTRIBUTION:** Advancements—Presumptions. The
3 payment by a parent of a debt owed by his son to a third person creates a rebuttable presumption that such payment was intended as an advancement.

*Appeal from Clarke District Court.*—HOMER A. FULLER, Judge.

SEPTEMBER 28, 1923.

ACTION in equity, to set off the indebtedness of an heir against his interest in real estate, and to quiet title. Judgment and decree as prayed. The defendants J. F. Knotts and Anna Knotts appeal.—*Affirmed.*

*W. S. Hendrick* and *James E. Goodwin,* for appellants.

*O. M. Slaymaker* and *A. M. Miller,* for appellees.

STEVENS, J.—Clara E. Woods died intestate, March 4, 1920, seized of 240 acres of land in Clarke County, but without any

personal estate. The plaintiff N. C. Hoffman is the administrator of her estate, and C. F. Woods is her surviving husband. The remaining parties, plaintiff and defendant, are her heirs at law. Appellant J. F. Knotts is the son of deceased by a prior marriage, and is a half brother to the Woods heirs.

1. DESCENT AND DISTRIBUTION: rights and liabilities of heirs: setting off debts.

It is alleged in the petition that the deceased signed notes with the appellant J. F. Knotts, as surety, which she was later compelled to pay; that the aggregate amount of said notes greatly exceeds the value of appellant's share in the real estate of deceased. Plaintiffs pray in their petition that the indebtedness of appellant to the estate be set off against his interest in the real estate, and that title thereto be quieted in the remaining plaintiffs and defendants, except the plaintiff administrator.

Answer was filed for all minor defendants by a guardian *ad litem.* J. F. Knotts and wife filed separate answer, admitting the allegations of relationship and denying all other material allegations of the petition, and set up the statute of limitations and a plea of settlement of all indebtedness with the deceased. Evidence offered to sustain the plea of settlement will be discussed under a separate division of this opinion.

Appellants strongly urge upon us three principal grounds for reversal: (a) That the indebtedness of an heir cannot be set off against his interest in real property belonging to the estate; (b) that the claimed indebtedness of appellants is barred by the statute of limitations; and (c) that an oral settlement was had between J. F. Knotts and his mother, by the terms of which he and his wife were discharged from all liability to the estate. We will discuss the foregoing propositions in the order stated.

The right of an administrator to retain sufficient of the personal estate belonging to an heir to offset any indebtedness due from such heir to the estate is conceded by appellants, but they contend that the right of retainer or set-off is limited to the personal estate, and is not applicable to real estate. The courts are apparently a unit upon the first proposition, but they are divided upon the latter. It has been quite generally held that the administrator may retain personal property and deduct the amount of the heir's indebtedness from his share of the surplus proceeds

of the sale of the real estate of an intestate. *Fiscus v. Moore,* 121 Ind. 547 (23 N. E. 362); *In re Dickinson's Estate,* 148 Pa. 142 (23 Atl. 1053); *Nelson v. Murfee,* 69 Ala. 598; *Hopkins v. Thompson,* 73 Mo. App. 401; *Smith v. Smith,* 13 N. J. Ch. 164. Courts in many jurisdictions apply the same general rule to real estate as to personalty. *Fiscus v. Fiscus,* 127 Ind. 283 (26 N. E. 831); *Wilson v. Channell,* 102 Kan. 793 (175 Pac. 95); *Oxsheer v. Nave,* 90 Tex. 568 (40 S. W. 7); *Gosnell v. Flack,* 76 Md. 423 (25 Atl. 411); *New v. New,* 127 Ind. 576 (27 N. E. 154); *Brown's Admr. v. Mattingly,* 91 Ky. 275 (15 S. W. 353); *Keever v. Hunter,* 62 Ohio 616 (57 N. E. 454); *In re Donaldson's Estate,* 158 Pa. 292 (27 Atl. 959); *Streety & Co. v. McCurdy,* 104 Ala. 493 (16 So. 686); 2 Woerner on American Law of Administration (2d Ed.), Section 564.

Courts denying the right of retainer or set-off against real estate proceed upon the theory that the real estate of an intestate descends directly to the heirs, upon the death of the ancestor, and that title vests at once in them, subject only to the debts of the intestate. Courts applying the contrary doctrine base the same either upon statute or upon the theory that an heir who is indebted to the estate has, to the extent of such indebtedness, already, in effect, received distribution, and that his interest in the real estate should, in making distribution, be charged therewith, if the personal property is insufficient. *Senneff v. Brackey,* 165 Iowa 525, and cases cited.

This court, with a single exception, is committed to the doctrine that limits the right of retainer or set-off to the personal estate.

The plaintiff in *Rider v. Clark,* 54 Iowa 292, was the grantee of Ezra Clark of his interest as heir at law in the real estate of his deceased mother, Lucy M. Clark. During the lifetime of Lucy M. Clark, she and her husband borrowed $1,030 from one Hicks, securing the payment thereof by a mortgage upon 80 acres of land belonging to her. The proceeds of this loan were turned over to their sons Ezra and Charles, as follows: $530 to Ezra and $500 to Charles. At or about the time of the execution of the mortgage by Lucy M. Clark and her husband, William, Ezra agreed in writing to pay the Hicks mortgage, to the extent that he had profited thereby, with interest. This he never did, and

the mortgage was foreclosed. Plaintiff, Rider, brought an action to quiet title to the interest conveyed to him by Ezra. The defendant William Clark, who was the surviving husband of Lucy, set up the written agreement of Ezra to pay the mortgage, and asked that same be set off against his interest in the real estate, and that title therein be quieted in him, as against his grantee. The court held that:

"The written agreement executed by Ezra Clark, in which he undertook to pay the borrowed money which had been given him, created a personal liability upon his part to his parents, but created no specific lien upon the portion of the real estate which might afterward fall to his share by inheritance. As no lien was created upon Ezra Clark's interest, in virtue of the written agreement, it follows that his share, or the share of his grantee, of the premises in controversy, cannot be diminished in consequence of the agreement, or made subject to the lien of the mortgage. If Ezra Clark has failed to pay the debt, as he agreed, the demand must be enforced as a personal claim against him."

It was alleged in the answer that Ezra was insolvent; but, as the appeal was from the ruling upon a motion to strike parts of defendant's answer, this allegation is not mentioned by the court.

Plaintiffs in *McCormick v. Hanks,* 105 Iowa 639, were judgment creditors of Henry Hanks, son and heir at law of Margaret Hanks, who died intestate, seized of certain real property in Buena Vista County. Henry Hanks executed two notes to his father, William Hanks, some time before his mother's death. These notes were not paid. William died testate, making his wife his sole devisee. Henry, after his mother's death, deeded his interest in the estate to his sister, who was also made a defendant. Although the statement of the court is meager, we gather that the defendants, in addition to setting up the deed to Margaret, which was found to be a mortgage, also claimed the right to have the notes executed by Henry to his father set off against his interest in the real estate. The court held that:

"The executor is, at most, but a simple contract creditor; while plaintiffs have established an equitable lien on the real estate. The interest of Henry Hanks was a devise. He took,

not through the executor, but directly from decedent. Before any steps were taken by the executor to enforce payment of the notes, plaintiffs' lien had been established. Under the circumstances, we think plaintiffs' claim must prevail.''

In passing upon this question in *Russell v. Smith,* 115 Iowa 261, the court said:

''If the evidence established an advancement to the son, then plaintiff would take the land subject thereto, although he had no notice thereof before purchasing. But, as there was no advancement, the question remains, Does a purchaser of real estate from an heir, pending administration on the estate of the deceased, take it subject to the debts of that heir? Herrick & Doxee, Probate Law (2d Ed.) pp. 387-388, seems to hold that he does. But we do not regard this statement as correct. True, we have held that a purchaser takes subject to an advancement to an heir, whether with or without notice. *Finch v. Garrett,* 102 Iowa 386; *Pinckney v. Pinckney,* 114 Iowa 441. But we have never held that he takes subject to a debt. Indeed, the contrary seems to be the rule in this state. *Rider v. Clark,* 54 Iowa 292.''

The court, in the further course of the opinion in this case, said:

''There may be cases where, on account of the insolvency of the debtor, or for some other cause, equity will interfere for the protection of the estate; but this is not one of them. There is no showing that George Stahley is insolvent, and no reason for not applying the general rules of law hitherto stated. The administrator holds a claim against Stahley, which it is his duty to enforce. This claim is not a lien on Stahley's property until reduced to judgment. To administer on the estate of a deceased in a partition proceeding, and to adjust claims in behalf of and against the estate, would be novel, to say the least.''

The doctrine of these cases is reaffirmed in *Senneff v. Brackey,* supra, and the exception suggested in the *Smith* case to the general rule is therein recognized and adopted as the law of this state. The facts, as stated by the court in the *Brackey* case, are substantially as follows: Alf. T. Brackey, who died testate April 12, 1909, devised certain real estate to his son, Albert A. Brackey. In 1911, Albert executed mortgages to various parties, covering his interest in the land devised to him by

his father. With one exception, these mortgages were given to secure pre-existing debts. At the time of the death of testator, Albert had $3,260 in his hands, belonging to the estate. While not so specifically stated, this was probably cash. This he refused to turn over to the executor. A special administrator was appointed, who brought suit against Albert and obtained judgment against him. Judgment was entered October 5, 1912, which, as already appears, was subsequent to the execution of the mortgages referred to. Action in equity was brought by the mortgagee, to foreclose the mortgages. On October 29, 1912, Albert Brackey filed a petition in voluntary bankruptcy, so that, at the time of the trial, he was insolvent. After judgment was recovered against Albert by the special administrator, action was brought by him to have the judgment declared a specific lien upon Albert's interest in the real estate devised to him by his father, and that same be given priority over the mortgages. This action and the action to foreclose the mortgages were consolidated and tried together. The court held that, under the peculiar facts of the two cases, the lien of the mortgages was junior to the equitable right of the executor to have the land set off against Albert's indebtedness. The court said:

"These cases are in equity, and they are both peculiar in their facts,—so peculiar as to introduce exceptions to general rules; and this opinion is not to be taken as a precedent for more than is actually decided."

As already indicated, the peculiar facts giving rise to the exception were: (a) That Albert A. Brackey had property of the testator's in his possession which he refused to turn over to the executor, in trust both for the testator and, after his death, for the personal representative of his estate; and (b) that Albert Brackey was insolvent.

The facts in the case at bar, which counsel for appellee contend bring it within the exception announced in the *Brackey* case, are: (a) That appellant J. F. Knotts is insolvent; and (b) that his indebtedness to the estate, if any, was barred by the statute of limitations, before the death of his mother. In the course of the opinion, the court in the *Brackey* case further said:

"The only question, as we view it, is simply this: Is a devise of real estate, either general or specific, to one who, at the time

of testator's demise, is largely indebted to the estate, and is insolvent, subject to the devisee's indebtedness to the estate; or does it pass to him free from this indebtedness, and may he or his assignee, grantee, or mortgagee take the estate devised, free from all claim by reason of his indebtedness to the estate?''

Referring to *Russell v. Smith,* supra, from which we have already quoted a portion that follows, the court, in the further course of its opinion in the *Brackey* case, said:

''In the *Russell* case, supra, it was said, however: 'There may be cases where, on account of the insolvency of the debtor, or some other cause, equity will interfere for the protection of the estate.' This was, perhaps, dictum; and yet it was announced for the purpose of saving an exception to the general rule, if any such exception exists. As a matter of fact, many courts, and doubtless a majority, numerically, recognize and enforce the exception.''

It thus appears that the exception created by the *Brackey* case arises in equity, which treats the indebtedness of distributees to the estate as assets thereof, and is based upon their insolvency. The justice of the rule is apparent. It prevents the unfair advantage which must otherwise accrue to an impecunious distributee whose indebtedness to the estate could not be otherwise collected, and places the insolvent and solvent heir upon the same basis. We have already called attention to the decisions of this court in which the right to offset claims in favor of the estate against the share of a distributee in real property is denied. As pointed out in the *Brackey* case, the courts are divided upon this question; but it must be confessed that the reasons assigned by those denying such right are not very persuasive. We need not, however, at this time, discuss this question. The personal property of the deceased in the case at bar was wholly insufficient to pay the claims against appellant, and it must be offset against his share of the real property or be lost to the estate. The exception noted meets this exact situation. Appellant is, and has long been, insolvent. The indebtedness to his mother arose out of the payment by her of notes which she had signed with him at different times, as surety. The only particular distinction between the facts in the *Brackey* case and the case at bar is that, in the former, Brackey was a devisee,

and held property in trust for the benefit of the estate; and in this case, the distributee is a mere debtor. In equity, the claim against a distributee is treated as an asset of the estate, and in the distribution thereof, the effect is the same, whether money or property is withheld by a devisee, or the indebtedness of a distributee is not paid.

With perhaps the exception of one item, the indebtedness of appellant to his mother was barred by the statute of limitations at the time of her death. Appellee urges this fact as an additional ground of equitable jurisdiction; whereas appellant sets it up as a complete defense to the cause of action. Although the right to offset the share of a distributive against a barred claim owed by him to the estate was considered in *Garrett v. Pierson,* 29 Iowa 304, and *Lohman v. Mockler,* 190 Iowa 578, the issue was not directly involved in either of these cases. The court in the *Garrett* case said:

2. DESCENT AND DISTRIBUTION: rights and liabilities of heirs: barred claims.

"The claim may be barred by the statute, and yet be properly set up as a claim against defendant in settling his distributive share of the estate."

The above is quoted with approval in the *Lohman* case. The court is at present divided upon the effect of the statute of limitation as applied to the matter of offset; but it is the opinion of the writer that, as the claim against an insolvent distributee is treated in equity as an asset of the estate, the bar of the statute of limitations cannot be interposed to prevent the administrator from offsetting the share of the distributee, so far as necessary, against the indebtedness of a distributee. This is the rule in numerous other jurisdictions. *Holden v. Spier,* 65 Kan. 412 (70 Pac. 348); *Tinkham v. Smith,* 56 Vt. 187; *Wilson v. Channell,* 102 Kan. 793 (175 Pac. 95); *Ex parte Wilson,* 84 S. C. 444 (66 S. E. 675); *Webb v. Fuller,* 85 Me. 443 (27 Atl. 346); Woerner on the American Law of Administration, supra. The Supreme Court of Kansas, in *Holden v. Spier,* supra, said:

"The theory of the law, and it is an equitable one, is that the indebtedness of an heir of the estate should be regarded as assets of the estate already in his hands, and that his legacy or share is to that extent satisfied. It would be grossly inequitable to allow an heir to obtain his full share of an estate while he was

withholding a portion of the same that was already in his hands. * * * The lapse of time does not extinguish an obligation nor satisfy a debt, but the statute simply bars the remedy and prevents the use of the obligation or debt as a cause of action of affirmative defense.''

Treating the distributee as the claimant, demanding distribution to him by the administrator of his share in the estate, the position of the administrator is akin to that of one who pleads a barred debt as a counterclaim, under the provisions of Section 3457 of the Code. This statute is not, of course, applicable to the case; but the assumed situation of the parties is not materially different. It is the opinion of the writer that the plea of the statute of limitations in an equitable action in which it is sought to offset the share of an insolvent distributee against his indebtedness to the estate is not available as a defense. Possibly the writer is disposed to give too little significance to the failure of the intestate to put the claim in judgment during her lifetime; but it would seem that the presumption that a parent who dies intestate intends, in the distribution of his estate, to treat his children alike, is sufficiently strong to overcome any presumption that might arise from his failure to reduce a claim against an impecunious and insolvent son to judgment before the same becomes barred by the statute of limitations.

It is further contended by counsel for appellee that the sums paid by the deceased as surety upon the notes of appellant should be treated as advancements. There is much in the record to

3. DESCENT AND DISTRIBUTION: advancements: presumptions.

sustain this claim. Appellant was called into counsel with the other heirs, the next day after his mother's funeral, and in their presence and the presence of others, who, so far as the record shows, were wholly disinterested, admitted that he owed the estate, and expressed a desire to pay the debt, but declined to convey his interest in the land to the other heirs, in settlement. The evidence shows that the claims, without interest, amount to more than appellant's interest in the estate. All of the notes paid by deceased were kept and preserved by her, and appellant, on February 25, 1918, a trifle over two years before her death, wrote her as follows:

''Dear Mother: You will find enclosed note for $350 that

you must apply on the interest that is past due that I owe you on the notes that I could not pay. I am sorry I could not pay you the principal, but you know I have had a hard time. Yours respectfully, J. F. Knotts.''

In explanation of this letter, appellant testified that it was written and the note inclosed, for the security of which a mortgage was executed and recorded, upon the advice of an attorney, for the purpose of preventing the levy of an execution upon certain personal property, which was threatened by the suit of a creditor against him. The truth or falsity of this explanation must be determined by his testimony alone. If it be believed, no weight can be given it, either as a recognition in writing of the indebtedness in question or as a circumstance bearing upon the status of the claim. The writing does not refer to nor designate any particular notes, and no parol testimony was introduced, to show that he referred to the notes paid for him by his mother. We said, in *West v. Beck*, 95 Iowa 520:

''Now, advancement is an irrevocable gift made by a parent to a child in anticipation of such child's future share of the estate; and when a father pays off a debt owed by his son to a third person, the law presumes the money so paid is an advancement, unless it be shown that it was not so intended.''

The above is particularly applicable to the present case. It is true that other facts and circumstances were shown in evidence in the *West* case, but the above language of the court was employed in wholly independent discussion. If the payments made by the deceased be treated as advancements, and therefore as drawing no interest, the amount exceeds the value of appellant's share in the real estate in controversy, and we think they should be treated as in the nature of advancements. No evidence was introduced from which it might be inferred that a contrary intention existed. The careful preservation of the notes by the deceased would seem to be a strong circumstance tending to show that she expected that they would be taken into consideration in the settlement of her estate. A judgment would have been worthless, except to prevent the bar of the statute.

III. Appellant also set up a plea of settlement. Much of the evidence offered to sustain this plea is incompetent, under Code Section 4604, and the preponderance of the other testimony

is against it.  None of the notes paid by deceased was ever delivered to appellant, and some notes executed to him by his mother many years before, in settlement of the amount due him from her as guardian, were retained by him.  The evidence relied upon to establish the plea of settlement is completely overcome by the testimony of appellees' witnesses.  It follows that the judgment and decree of the court below must be, and is,— *Affirmed.*

PRESTON, C. J., EVANS and DE GRAFF, JJ., concur.

WEAVER, J. (concurring).  I concur in the result announced in the foregoing opinion, on the theory that the record fairly shows an advancement made by the mother in her lifetime to the appellant, making it proper that the same be charged to the son in the settlement of her estate.  I am, however, unable to agree that the right exists in the administrator to set off the simple debt of an heir against the share of the heir in the estate of a deceased parent.